<hr />

## John B. Fiquet, Jr. and another v. James Allison.

*Tenancy in common of crops put in on shares.*—One J.' put in wheat on shares on defendant's lands, and was to have possession of the land, and do other farm duties upon shares of other produce. As there was no proof that it was agreed that J's rights in the crops should be forfeited by non-fulfillment of any other conditions, and no evidence of damages from any such non-fulfillment, it was held, [in a controversy between defendant and plaintiffs, to whom J had mortgaged the crops while growing, that J was clearly tenant in common of the crop.

*What amounts to a conversion: assumpsit in case of.*—When the crops were ripened, plaintiffs harvested them, but defendant drew them off, threshed them, placed them in his granary, and refused to recognize any rights of plaintiffs therein, or to deliver their share. *Held,*

*First:*—That this exclusive possession of the crops, and denial of all right of plaintiffs therein, amounted to a conversion.

*Second:*—That the tort might be waived and assumpsit brought for such a conversion, although no sale of the grain was proven except of a trifling portion, not equal to defendant's own separate interest.

The grain being in marketable condition, the defendant in possession was bound, on reasonable request, to have the share of his co-tenants measured out to them; and for a breach of this duty, which the law implied from his express contract, assumpsit is as appropriate a remedy as any other, if plaintiffs see fit to resort to it.

*Heard April 7th Decided May 3d.*

Case made after judgment, from Livingston Circuit. The facts, so far as necessary to an understanding of the legal questions, are stated in the opinion.

*G. V. N. Lothrop,* for plaintiffs:

We claim the plaintiffs entitled to recover.

1. They prove by Jarvis the agreement to take defendant's farm on shares, for one year, and his entry on it and the putting in the crops.

2. This contract gives him a title as tenant in common to his share of the crops put in by him: — 8 *Johns.* 151; 8 *Cow.* 220; 15 *Wend.* 379; 21 *Vt.* 172; 15 *Barb.* 333; 17 *Ala.* 162; 17 *Ala.* 172.

This contract is not a lease, but a contract to work on shares.

Whether Jarvis performed his whole agreement or not; whether he was justified in leaving the farm or not in November, is a matter of no consequence. It does not affect his *title* to his share of the growing crops. And this action is based on that title.

The defendant refused to deliver the plaintiffs their share of the wheat; denied their right to any of it, and actually sold part of it.

This was, in effect, a conversion of the wheat to his own use, and trover would lie: — 31 *Barb.* 569; *Webb v. Mann,* 3 *Mich.* 139.

And the plaintiffs can waive the tort and maintain assumpsit: — 3 *N. H.* 384; 3 *Eng.* 202; 4 *Penn.* 295; 15 *Ohio,* 9; 1 *Hill,* 240; 5 *Hill,* 583.

*M. B. Wilcox* for defendant :

Jarvis had no interest in the grain that he could mortgage. His contract with defendant was not severable, and to entitle him to any portion of the crops, there should have been, at least, a substantial performance on his part. Whereas, he utterly failed in every essential particular of his agreement : — 5 *Mich.* 449; 1 *Chit. Pl.* 303; 10 *Mass.* 287; 10 *Pick.* 205.

If Jarvis had any interest in the grain mortgaged, the plaintiffs, by virtue of the mortgages, became tenants in common of the same with defendant.

And to enable them to maintain this action they must show a conversion of *the whole property* by defendant: — 2 *Greenl. Ev.* § 646, *and note* 8 : taking the exclusive possession of the property, and refusing to deliver it on

demand not being sufficient:— *Co. Litt.* 200; 3 *Johns.* 175; 1 *Taunt.* 241; 13 *Me.* 192; 15 *Johns.* 179.

For this, either may lawfully do, each being equally entitled to the possession:— 7 *Mass.* 137; 2 *Greenl. Ev.* § 646.

Trover is the action usually brought by a tenant in common against his co-tenant for conversion of common property; and, to sustain that action, a "loss, destruction or sale" must be shown:— 2 *Hill*, 47; 22 *Me.* 287; 9 *Cow.* 230; 7 *Wend.* 449; 3 *Mich.* 143; 1 *Taunt.* 241.

Assumpsit can *only* be brought in case of a sale of the property:— 2 *Greenl. Ev.* § 120. An *actual sale* must be shown:— 5 *Pick.* 285; 10 *Id.* 161; 12 *Id.* 120; 3 *Watts*, 277.

In such cases it is said the tort may be waived and assumpsit may be brought *to recover the proceeds of the sale*, but there must be a tort to be waived for which trespass or case would lie:—10 *Pick.* 161.

It is difficult to conceive, then, so long as there is no tortious act shown, no conversion, no sale, how this action can be maintained.

CAMPBELL J.:

Plaintiffs sued defendant for the value of certain grain in which they claimed an undivided interest, and which, upon demand of their portion, he refused to surrender, denying their rights.

The grain was grown on shares upon defendant's land, by one William Jarvis, who was to have possession from April 1858, to April 1859, and to put in crops on shares, and to do other farm duties upon shares of other produce. Some question was raised concerning his complete fulfillment of the various arrangements; but, as there is no proof that it was agreed his rights in the crops, as a tenant in common, should be forfeited by non-fulfillment of any other conditions, and as there is no proof of dam-

ages growing out of such non-fulfillment, it becomes unnecessary to consider whether the evidence will, or will not, warrant a conclusion that he failed in any duty. As the case stands, he was very clearly a tenant in common in the crops.

While they were yet growing, he mortgaged them to plaintiffs, who, at the proper season, caused them to be harvested, when they were drawn off by defendant, who threshed the grain and put it in his granary. He seems to have intimated some formal objection, in the outset, to the right of any one but himself to cut the grain; but subsequently, while it was being cut, recognized plaintiffs' privilege to do so.

Two questions arise upon the facts:

*First*, whether defendant's denial and refusal to recognize plaintiffs' rights or deliver their share, amounted to a conversion; and *secondly*, whether assumpsit will lie for such a conversion; no sale being proven, except of a trifling portion of grain, not equal to the defendant's own separate interest.

It is laid down by most of the authorities, that a refusal, by one tenant in common of a chattel, to relinquish possession, is no conversion, because each has as good a right to the possession as the other. But it can hardly be questioned that the refusal of any one to give up to another that to which such other has a *better right*, would be a conversion. The doctrine referred to applies to things in their nature so far indivisible that the share of one can not be distinguished from that of another. But it can have no reasonable application to such commodities as are readily divisible, by tale or measure, into portions absolutely alike in quality: as grain or money. When one person is entitled to half of twenty bushels of wheat in a mass, he is entitled to have ten bushels in severalty; and it would be destructive of all his beneficial rights to hold that his co-tenant in the heap could refuse a divi-

sion, when properly demanded; or that one who held one hundred dollars for himself and a co-tenant, could retain the fifty dollars of each. In the case at bar, defendant refused to give up any portion of the grain, and denied that he had any grain for the plaintiffs. Such an absolute denial of title, and refusal to recognize the rights of his co-tenants at all, would, we think, amount to a conversion, under any circumstances. It is difficult to see how a sale would work any greater prejudice to the co-tenants, who are effectually deprived of their property, so far as it is in his power to deprive them.

The question then arises, whether an action properly lies in assumpsit. It is said in several of the cases, that, where property has been tortiously taken, and converted by *sale*, the owner may affirm the sale, and sue for the proceeds in assumpsit; but that where there has been a conversion without sale, the tort can not be waived. It certainly is somewhat anomalous to place parties in contract relations against their will, where no privity exists; and the cases where it is permitted seem to be justified only on the ground that no prejudice can result to the defendant by allowing it. But where a party commits a breach of a duty, which the law implies from his express contract, assumpsit is as appropriate a remedy as any other, if a plaintiff sees fit to resort to it. The plaintiffs here derived their rights, as tenants, from the contract of defendant with their grantor, creating the tenancy. The grain being in marketable condition, the co-tenant in possession was bound, on reasonable request, to have the plaintiffs' share measured out for them. His own contract precludes him from claiming more than his proportional amount. When he concludes to retain the remainder, he certainly is bound to pay for it: and the plaintiffs may, by their consent, convert the transaction into a sale; as it would have been a sale originally, had such consent been given at the time. We think no principle of law is vio-

lated by allowing the action to be maintained in its pres-
ent form.

Judgment must be rendered for plaintiffs, for $110.48,
being the value of the grain when converted, with interest.
They are also entitled to costs of both Courts.

MARTIN CH. J. and MANNING J. concurred.

CHRISTIANCY J. did not sit in this case.