## A. Isaacs *v.* Hermann & Moss.

1. Assumpsit—Tort.—Where goods have been tortiously taken and converted by *sale*, the owner may affirm the sale and sue for the proceeds in assumpsit, if he choose to waive the tort and convert the transaction into a sale.

2. Same—Trespass—Form of Action.—It is a well settled rule of law, that *indebitatus assumpsit* lies for goods, which the defendant has by fraud procured the plaintiff to sell to an insolvent, and which the defendant has got into his possession. *Held*: that the law will imply a contract to pay for the goods from the circumstances of their having been the property of plaintiff, and having come to the possession of defendant, if unaccounted for, and he could not be permitted to account for the possession of the goods by setting up the sale to W., which sale he had himself procured by fraud, because no man must be permitted to take advantage of his own fraud. This is the proper form of action, and not trespass. The defendant having obtained the goods by his own fraud, cannot compel plaintiff to sue in an action of trespass. To exempt Isaacs from responsibility, *civiliter*, would necessitate too nice a distinction to reach the ends of substantial justice.

3. Same—Same.—The defendant was deprived of no advantage by the form of the action. In the one adopted, the scope of defense was as broad as in the more usual action of case, not the remotest prejudice inured to the defendant, because of the form of action. The "furtherance of liberal justice" was not thereby impeded, nor were any principles of law invaded. The merits of the controversy were as fully, fairly, and freely investigated and determined, in this form of action as they could have been done in any other.

*Quære ?* Whether in cases of goods obtained by a tort, the action of *assumpsit* for goods sold, is not co-extensive with the right to sue for money had and received, on the sale of goods tortiously taken ?

Error to the circuit court of Warren county.  Hon. Geo. F. Brown, Judge.

The facts of the case are very fully stated in the opinion of the court.

*Frank Johnston*, for plaintiff in error :

1.  The defendant was not liable to the plaintiffs for the value of the goods sold to Morris Wolfe. This point was made in the court below, in the first instruction asked by defendant and refused by the court.

The credit was given to Wolfe, and *to him alone*.  There is no evidence to show that Isaacs made any fraudulent agreement, or any contract of any kind with Wolfe by which

VOL I—29

the latter was to purchase goods from Vicksburg merchants on credit. There is no connection shown between Cohen, who purchased of Wolfe, and the defendant, except that one witness said he heard that Cohen was defendant's agent. And no connection is shown between Lewis and Isaacs, with these exceptions, 1st, Isaacs happened to be present when "Herts," the "crying" witness, who told the fifty lies, had an interwiew with Lewis; and 2d, the testimony in reference to the letter, which Herts says was read to him. The record shows this letter was written by Lewis. However that may be, I insist that the evidence is, that this letter was never sent *to its destination, was long after the purchase of the goods by Wolfe, destroyed in the presence of Herts, and therefore, could not possibly have had any effect on the plaintiff at all.*

Cohen, instead of advising Wolfe to leave, dissuaded him, and gave him means to pay his debts. There is nothing to induce even an inference that Isaacs *did* anything to give Wolfe a fictitious credit, or indeed that plaintiff ever *heard of Isaacs, or were aware of his existence* until *Herts,* Rienhardt's agent, went to Natchez, *and returned, which was long after the sale to Wolfe.*

The first and second instructions given to the plaintiff, in this view of the facts of the case, were erroneous, and if the third instruction for plaintiffs is the correct rule, *assuming as it does that defendant was liable,* if the credit given to Wolfe was the result of defendant's conduct.

I insist that there was no evidence in the case that justified the granting of such instructions, and furthermore, that there was not a word of evidence in the case that warranted the jury in believing that plaintiffs were induced by the defendant to give Wolfe the credit.

2. I next submit that the plaintiff could not recover on the facts of the case in the form of action adopted. It being an action of *assumpsit.*

*Case,* is necessarily the form of action adopted for "deceit-

fully representing a person to be fit to be trusted, or other deceit independent of, and without relation to, any *contract* between the parties." 1 Chit., pl. side, p. 137.

*Case,* is now used as contradistinguished from *assumpsit.* To sustain *assumpsit* there must be privity of contract between the parties. Ib. side, p. 99.

There is no privity of contract between plaintiffs and defendant. The contract was made betwen plaintiffs and Morris Wolfe. Kellogg v. Bradley, 7 How., 340–41; Cartwright v. Carpenter, 7 How., 337–39. Upon these authorities I insist that the form of action was misconceived.

3. Even admitting that *assumpsit* was the proper form of action, I insist the remedy could not be had on the evidence introduced, under the single count in the declaration of *indebitatus assumpsit.* There *must* be a correspondence between the declaration and the proof. The *common count* for goods sold *cannot* be maintained, and it is necessary to declare specially; if the sale was not to the defendant, but to a third person, that the defendant only is liable collaterally. 1 Chit., pl. s., p. 346,

The objections are: 1. Plaintiffs mistook the form of action. 2. That no recovery could be had under the common *indebitatus* counts on the special facts of the case.

4. I contend that the objection stated in the first bill of exceptions should have been sustained. Art. 90, Code 1857, p. 492, requires that the bill of particulars or itemized account shall be filed with or annexed to the declaration. The language is imperative. The declaration was filed August 8, 1871; the itemized account was filed April 1, 1872, *without leave of the court.* This was not a compliance with the statute.

*Lea & Lea,* for defendants in error:

The action of the court below, permitting plaintiffs to give evidence in support of their account, is assigned for

error, the account having been filed many months after suit was instituted. It remained on file several months before trial, and no motion was made to strike it from the files.

Upon the facts in the case, we think the instructions of the court below will bear the test of judicial scrutiny.

The first instruction for the plaintiffs certainly enunciates a correct proposition of law. It simply tells the jury that if two or more persons combine, confederate or agree together to accomplish a fraudulent or illegal object, *all* of them are equally liable for any injury sustained by the action of any *one* of them, in pursuance of the common design. 3 Dana, 550; 3 Monroe, p. 422.

The second instruction given for the plaintiffs by fair intendment is to the effect that, if Isaacs, by himself or agent, received the goods from Wolfe, knowing that they had been fraudulently obtained with the view of turning them over to him, he made himself a party to the fraud, and became liable for their value. This proposition appears so consonant with reason and justice as to require no labored argument in its support.

Finally, the jury were instructed that defendant cannot shelter himself behind the credit given to Wolfe, if that credit was in any way the result of his own fraudulent conduct.

But though the court should incline to the opinion that any of the instructions in the case have been improperly given or refused, the verdict rests upon so firm a foundation of proof that we may invoke the frequent decision of the court against its disturbance. Prichard v. Myers, 11 S. & M., 169; Wiggins v. McGimpsey, 13 S. & M., 532; Holloway v. Armstrong, 1 George, 504; Hank v. Neal, 44 Miss., 466; Buskins v. Winston, 2 C., 431; Dozier v. Ellis, 6 C., 730; Fore v. Williams, 6 George, 533; Cameron v. Watson, 40 Miss., 190.

It was strenuously contended in the court below, that the plaintiffs had resorted to a form of action that could not be sustained upon the proof in the case. It is undoubtedly true that *case* would be the more usual action to enforce plain-

tiffs' right, but we conceive it to be no less true that they *may waive the tort and sue ex contractu,* it being incumbent upon them to show the same condition of facts in evidence that would have sustained the action *ex delicto.* M. C. R. R. Co. v. Fort., 44 Miss., 423.

"In some cases where goods have been wrongfully taken, the plaintiffs may waive the tort, and sue upon an implied contract, as for goods sold and delivered. Thus, when a person gets goods into his possession by fraudulently procuring the plaintiffs to supply them to an insolvent, or to his own son who is a minor." 4 Phillips Ev., 110; Biglow v. Jones, 10 Pick., 161; Cummings v. Noyes, 10 Mass., 435; Bartlett v. Bramhall, 3 Gray, 260.

The prevailing qualification to the rule, to-wit, that the defendant cannot be deprived, by the resort to this action, of any benefit which he could have derived under the action *ex delicto,* in no way affects our cause. M. C. R. R. Co. v. Fort., 44 Miss., 423; 1 Campbell, 285; 8 Bing., 43.

The doctrine of waiver is well expressed by Jackson, judge, in the case of Cummings v. Noyes, with respect to goods. "It is a long established rule that the owner from whom they have been taken, may in many instances, waive the tort, as it is expressed, and state his demand as arising on contract. It is competent for him to treat the party, liable to his action, as a purchaser, agent or bailee, whose conversion and disposal of the goods is thereby sanctioned and confirmed, and then the value of the goods, or a fair compensation for the use of them, are recoverable, and to be assessed in damages."

The action of *assumpsit* is, at least, equally favorable to the defendant as trespass would be. In this connection, see 3 Dana, 552; 6 Greenleaf, 223; 12 Pick., 120; 1 Marsh., 83.

While we do not desire even to seem to run counter to the views of this court in the criminal case recently decided, Isaacs *et al.* v. The State, we confidently submit that the testimony establishes the liability of the defendant *civiliter,*

and that the verdict of the jury herein should not be disturbed.

TARBELL, J., delivered the opinion of the court:

*Assumpsit* by Hermann & Moss, merchants, against Isaacs, to recover the value of a bill of goods, the items of which were filed and made a part of the record. The declaration is in the usual form for goods sold. On the trial, an objection was made to the introduction of evidence in support of the action, but the ground of objection is not stated. The objection was overruled, and, presumptively, this action was correct.

The instructions of the court to the jury, presented the following propositions, on which the plaintiffs rested their cause at the circuit court, as they do here :

1. That Isaacs, in connection with others, entered into a fraudulent agreement with one Morris Wolfe, by which it was agreed between them that Wolfe was to go to Vicksburg, and purchase, on a credit, large quantities of merchandise, and deliver the same to Isaacs, or his agent, for a sum less than their value, and was then to leave the State; or, in other words, that the goods sued for were obtained of the plaintiffs by the fraud of defendant, preconcerted with Wolfe and others.

2. That the goods sued for were sold to defendant, Isaacs, or his agent, at a price greatly less than their value, and with a knowledge that they were fraudulently obtained, with a view to such sale by Wolfe.

3. That, though the agreement for the purchase or delivery of the goods between Cohen and Wolfe was unknown to defendant, Isaacs, at the time it was entered into, yet, that Cohen was in the habit of purchasing goods as the agent of Isaacs, and that the latter received and accepted, and held the proceeds or beneficial results of such fraudulent arrangement, and that he is thereby estopped from denying the agency of Cohen.

4. That if the credit given to Wolfe was in any way the

result of the fraudulent conduct of Isaacs, he cannot avail himself of that credit as a defense to this action.

The defense contended below, as they do here :

1. That if the plaintiffs sold the goods to Wolfe, and on his credit, they cannot recover in this action against Isaacs.

2. That in this action the plaintiffs cannot recover.

In the instructions given to the jury, the court sustained all the propositions of the plaintiffs and overruled those of the defendant.   The jury returned a verdict for the plaintiffs in the action, and assessed the damages at $742.26, for which sum, with costs, judgment was entered against the defendant.   There was no motion for a new trial, but there were exceptions to the instructions for plaintiffs and to the refusal to instruct as requested by defendant.

The evidence presented by the bill of exceptions exhibits these leading facts : The plaintiffs in the action were merchants in Vicksburg; the goods, to recover the value of which this suit was brought, were sold to Morris Wolfe, an itinerant peddler, December 19, 1870 ; a prior sale of goods by Hermann & Moss, to Wolfe, had been in part paid for by draft on defendant in this action, Isaacs, who was a merchant in Natchez ; A. Cohen was a general agent of Isaacs, and managed a store for the latter, and in his name, at Ashland, La.; A. Lewis was a confidential clerk of Isaacs, at Natchez ; soon after the sale of the goods, two brothers, Herts, one a clerk with Hermann & Moss, and the other clerk with Reinhardt, another merchant in Vicksburg, went to Natchez and Ashland, in pursuit of Wolfe and the goods sold to him ; a search warrant was taken out in a magistrate's court, on the application of Hertz, against Wolfe, on which the house of Lewis was searched, without finding Wolfe ; Herts then went to the store of Isaacs, where Lewis denied knowing Wolfe, and requested Herts to leave the store ; subsequently Lewis admitted that he knew Wolfe, and asserted that he had him secreted in his house at the time of the search, and further stated that he knew all about the transaction on which Herts visited Natchez ; he further

stated to Herts that if Vicksburg merchants were fools enough to sell goods to peddlers, they ought to lose their money; Lewis also read, in the presence of the Herts brothers, and of Isaacs, a letter written by himself, and signed by Isaacs, addressed to a merchant in Vicksburg by the name of Sokoloski, advising the latter, in substance, " that Wolfe was going to Vicksburg to purchase goods, and for Sokoloski to sell him what he wanted, and he would protect him; that he had written to Cohen, agent of Isaacs, at Ashland, La., to negotiate for the purchase of the goods which Wolfe would buy in Vicksburg, at forty cents on the dollar; that he would then assist Wolfe to run out of the country; but that for Sokoloski to sell him what goods he wanted and he would protect him; and that he wanted Sokoloski to sell Wolfe to give color to the transaction, so that other merchants in Vicksburg would sell to him." When thus read, the witness says this letter was destroyed, and that both Lewis and Isaacs then told the witness they had $400.00 for Sokoloski. In the same conversation, Lewis told Herts that after the search of his house, he took Wolfe out eight or ten miles, and sent him away. At the close of this conversation, one of the brothers Herts and Lewis went out, when Isaacs paid the other $200.00 on account of Wolfe's indebtedness to Reinhardt. On the return of Lewis to the store, he was very angry, and said to Isaacs, " I did not want you to give him any money. Now, see what you have done. We are as big thieves as any of them. Now you've put your foot in it." Herts gave Lewis a receipt for the $200.00 " on account."

It appeared that the sale of the goods by Wolfe was negotiated with Cohen. On the store at Ashland was written " A. Isaacs," and the proof was that " the business of the store was done in the name of A. Isaacs, and Cohen was known there as Isaacs' general agent." It was also shown that Cohen said that Wolfe had before wanted to run away with goods in his possession, but he, Cohen, had pursuaded him not to.

A witness testified, that from conversations with Cohen, he learned that the goods purchased by him of Wolfe inventoried at $2,600.00, but what Cohen paid for them he did not learn, except that Cohen said " they were cheap enough."

All goods for that store were marked " A. Isaacs," and cotton shipped from there was marked in the same way.

After Cohen had persuaded Wolfe not to run away, he gave him a draft to pay his debts in Vicksburg, and there is evidence to show that the draft was signed " A. Isaacs, per A. Cohen."

This is the substance of the testimony for the plaintiffs.

In fact the evidence is thus somewhat fully stated. No evidence was offered on the part of the defendant, Isaacs, nor, as already noted, was there any motion for a new trial.

The instructions given and refused, were in accordance with the propositions heretofore mentioned.

This case is materially different from that of Isaacs *et al.* v. The State, determined by this court some time since, and rests in many respects on a different footing. The evidence in the case at bar is stated with precision, and it appears positively, that the store at Ashland was owned by Isaacs, and conducted by Cohen, who was the general agent of the former. Of these facts, there was no evidence in the criminal record, save that one witness had heard some one say Cohen was agent for Isaacs. And the whole testimony presented in that case was loosely and unsatisfactorily stated. This is accounted for, perhaps, from the fact that the civil cause was tried some months later than the other, and more care was doubtless considered essential.

The points most strenuously urged by counsel for plaintiff in error, are, that the action is misconceived, and that, in no case, is there any evidence to sustain a verdict against the defendant, Isaacs, for the value of the goods sued for. Both will be more elaborately considered, because of the earnestness with which they are pressed in the argument. When the tort may be waived and *assumpsit* for goods sold maintained, is a question on which jurists have failed to agree.

Relating as it does to private rights and public convenience, it is a subject of importance, and may with advantage be somewhat fully developed, though not now, perhaps, definitely settled. Miss. C. R. R. Co. v. Fort, 44 Miss., was *assumpsit* for damages resulting from a *trespass* to personal property. Upon this branch of the case, the court say : "The appropriate form of action for the injury complained of, is trespass, and not *assumpsit*. If the plaintiff may waive the tort, and recover for the value of the animals destroyed, he cannot thereby receive the benefit of this statute, which was meant for no such case. The damages which have resulted, flow from a trespass, and do not spring from a contract express or implied. To recover, the plaintiff must show the same condition of facts, in evidence, that would have sustained the action of trespass; the *gravamen* of the suit is the negligent conduct of the company's agent, resulting in the destruction of the stock, and however the pleading may set it out, in one form of action or another, it remains essentially the same. Within the words of the statute, 'it sounds in damages.'"

The point in that case was, not as to the form of the action, but, that, in *assumpsit* for damages flowing from a trespass, judgment final could not be taken on default without a writ of inquiry. In other words, by waiving the tort and suing in *assumpsit*, the plaintiff could gain no advantage. To this extent, that case presents a view to be considered in the case at bar.

Lightly v. Clouston, 1 Taunt., 112, was an action of *indebitatus assumpsit*, for the work and labor of a servant seduced from the service of the plaintiff by the defendant. The jury found a verdict for the plaintiff, subject to the opinion of the court, on the objection, that the plaintiff ought to have declared in a special action on the case, and that *indebitatus assumpsit* would not lie. Mansfield, ch. J., said : "In the present case, the defendant wrongfully acquires the labor of the apprentice; and the master may bring his action for the seduction. But he may also waive his right to recover dam-

ages for the tort, and may say that he is entitled to the labor of his apprentice; that he is consequently entitled to an equivalent for that labor, which has been bestowed in the service of the defendant. It is not competent for the defendant to answer, that he obtained that labor, not by contract with the master, but by wrong; and that, *therefore*, he will not pay for it." And that learned chief justice threw out the same suggestion that is contained in Miss. C. R. R. Co. v. Fort, viz: that, in some cases, the plaintiff may waive the tort, and sue in *assumpsit*, "and the practice," says Lord Mansfield," is beneficial to the defendant, because a jury may give in damages for the tort a much greater sum than the value of the goods." Heath, J., in the same case said on this point: "It is for the benefit of the defendant, that this form of action should be allowed to prevail, for it admits a set-off, and deductions, which could not be allowed in an action founded on the tort."

In Lindon v. Hooper, Cowp., 414, *assumpsit* was brought to recover back money paid for the release of cattle taken damage feasant. The doctrine was declared, that an action for money had and received, did not lie in such cases, the proper remedy being trespass or replevin, *assumpsit* being considered an unjustifiable attempt to deprive the defendant of the advantages which in those actions he would derive from the rules of special pleading.

Anscomb v. Shore, 1 Camp., 285, was a special action on the case for detaining the plaintiff's cattle in the pound, after a tender of amends. Sir James Mansfield said, "it would be introducing a new process into the law, *to try the legality of distresses in such an action as this*." So, *assumpsit* will not lie for rents and profits, or for property severed from the realty, when the title is thereby involved. Bigelow v. Jones, 10 Pick., 164. And, in an action for money had and received, brought to recover the proceeds of wood and timber cut by the defendant on lands from which the plaintiff had been dissiezed, it was held, that there was no authority for supporting the action, where there was no such

actual seizin and possession, at the time of the severance, as to enable the owner to maintain trespass or trover, and when of course there was no tort to waive. (Ib.) Nor will *assumpsit* lie for use and occupation against one who has entered and occupied land in defiance of the plaintiff. Wiggin v. Wiggin, 6 N. H., 298. But when the defendant has entered without any color of right, and held the land, the law, in cases where there is nothing to rebut the presumption, may, perhaps, presume a promise on the part of the defendant to pay for the use, and a permission on the part of the plaintiff. In such a case, the tort may, perhaps, be waived and *assumpsit* sustained. (Ib.) 3 Starkie's Ev., 1513; 2 Greenleaf, 337; 17 Mass., 299; 9 Dow., and Ry., 480.

Forms of action are wisely arranged for the maintenance and defense of the rights of parties, plaintiffs and defendants, but to these, as to all general rules, there are necessary and just exceptions. It was said, in Cummings v. Noyes, 10 Mass., 440, that " the form of the action may be considered, as it is in many other cases, a legal fiction, *suited to try the merits or the cause.*" Without fully endorsing this sentiment, it seems from the authorities, to be a very material consideration with the courts, that, where a plaintiff waives a tort and sues in assumpsit, the rights of the defendant shall not thereby be impaired. No such complaint is, or can be made, in the case at bar.

It is an old and established doctrine, that, a party whose goods have been tortiously taken and sold, may waive the tort and have his action for money had and received. In Lightly v. Clouston, *supra.*, Lord Mansfield said: " It has been held that trover may be converted into an action for money had and received, to recover the sum produced by the sale of the goods. I should much doubt the case of Smith v. Hudson, (4 Term R., 217,) but that I remember a case so long back as the time of Lord Chief Justice Eyre, in the reign of George II., in which the same thing was held. I should have thought it much better, for the law to have kept its course; but it has now

been long settled, that in cases of sale, if the plaintiff chooses
to sue for the produce of the sale, he may do it." Of the
same purport is the case of Young v. Marshall & Poland, 21
Eng. Com. Law. R., 215. And the rule is repeated in Bigelow
v. Jones, 10 Pick., 161 ; Jones v. Hoar, 5 Pick., 285; Gilmore
v. Wilbur, 12 ib., 130, etc.

Jones v. Hoar, 5 Pick., 285, was an action of *assumpsit*, for
goods sold, for that " the defendant had entered upon the
plaintiff's land and cut and carried away a quantity of tim-
ber." And the question was, whether the plaintiff could
waive the tort and sue in *assumpsit*, it not appearing that
the timber had been sold by the defendant. In the common
pleas, from which the case went to the supreme court, it
was determined that *assumpsit* would not lie, and Strong, J.,
delivering the opinion of the former, says: " The old rule was,
that what was tort in its inception, could not by any
subsequent transaction be made the foundation of an *implied
assumpsit*." This rule, he says, " was gradually relaxed, and
the question now is to what extent;" the judgment of the
common pleas  was sustained by the supreme court, wherein
it is remarked : " The  whole extent of the doctrine, as
gathered from the books, seems to be, that one whose goods
have been taken from him or detained unlawfully, whereby
he has a right to an action of trespass or trover, may, if
the wrong-doer sell the goods and receive the money, waive
the tort, affirm the sale, and have an action for money had
and received for the proceeds."

The " old rule ". referred to by Mr. Justice Strong, is
stated by Chitty, and is, undoubtedly, the general rule, but
it is belived to have been relaxed to a much greater extent,
than affirmed in Jones v. Hoar, in fact, and that the reason
and philosphy of the cases cited in that case justified its
relaxation therein, to the extent claimed by the plaintiff.
In concluding his review of the adjudications on this subject,
Mr. Justice Strong, says : " From an examination and due
consideration of all the cases, the court are of the opinion,
that where the action is brought against the original tort-

feasor, *unless there are some circumstances accompanying the transaction, which will authorize the plaintiff to consider it a contract,* or the property taken has been converted into money or money's worth, the plaintiff cannot waive the tort and bring *assumpsit.* It has already been mentioned that exceptions have been made in the cases of executors and administrators."

It appears, then, that in the opinion of the able jurists who delivered opinions in Jones v. Hoar, there are exceptions to the rule asserted therein, as in the cases of executors and administrators, and that " there are *some circumstances accompanying the transaction,* which will authorize the plaintiff to consider it a contract."

Stockett v. Watkins, adm'r, 2 Gill. & J., 326, was an action of *assumpsit,* for the use and occupation of land and for the labor and services of certain negroes. Referring to the latter, the court say: " Supposing Joseph N. Stockett to have possessed them as a trespasser from the first to the last of the tedious law suit, between him and Nicholas Watkins, the tort may be waived, and the action of *assumpsit* supported. This right to waive the direct injury, and adopt *assumpsit,* is universal, where the chattel taken, has been turned into money ; *And it has been sustained in some instances, where the chattel has not been parted with by the trespasser.* For the distinctions on this subject, *vide,* Hambly v. Nott, Cowp., 375. The present case, however, differs in its facts from most of the cases decided on this head. The negroes have been restored to Nicholas Watkins, and the claim is for damages for the tort, committed by the trespasser in seizing them, and detaining them from the owner. That this kind of tort may also be waived, and an action substituted for it, on the implied contract, is fully established by the modern authorities, and is in fact in principle like the old cases reported on this doctrine. Lightly v. Clouston, 1 Taunt., 112; Foster v. Stewart, 3 M. & S., 197, may be consulted, and they will be found decisive on the point."

Hill v. Davis, 3 N. H., 384, was an action of assumpsit for

a quantity of hewn stone, sold and delivered.  The stone was taken by defendant without authority or license of the plaintiff.  There was a recovery for the plaintiff, and this was sustained by the court of last resort.  It was said in the latter court:  "There are many cases in which a plaintiff may waive a tort, and thus change the form of his action." The opinion then proceeds to cite 1 Burr, 31; Buls., N. P., 130; 1 N. H., 151; 2 Starkie, 321; 1 Taunt., 112; 3 ib., 274; Cowper, 375, and 10 Mass., 440; concluding by saying: "The cases to which we have alluded fully warrant us in holding that the defendant is not to be permitted to say that he took them by wrong, and not by contract."  Cummings v. Noyes, 10 Mass., 440, was assumpsit for use and occupation of land, which the defendant had occupied under a judgment afterwards reversed, when this action was instituted.  The question was, as to the form of the action.  It is said by the court, that either trespass or *assumpsit* "may very well answer to present the question between the parties for legal adjudication."  And that: "The form of the action may be considered, as it is in many other cases, a legal fiction, suited to try the merits of the cause."  Further: "We are not controlled in the present case by any established practice, and, in supporting the present action, we violate no principles of law.  *The action of assumpsit is at least equally favorable to the defendant as trespass would be.*"  Referring to the adjudication, it is said: "With respect to goods, it is a long established rule, that the owner, from whom they have been tortiously taken, may, *in many cases*, waive the tort, as it is expressed, and state his demand as arising on contract.  It is competent for him to treat the party liable to his action *as a purchaser*, and agent or a bailee, whose use or disposal of the goods is thereby sanctioned and confirmed; and then the value of the goods, or a fair compensation for the use of them, is recoverable, and to be assessed in damages.  Sundry cases to this effect are stated in Hambly v. Trott."  This opinion was rendered by Jackson, J.,

and there were then on the Massachusetts bench, Parsons, C. J., with Sewall and Parker, justices.

Mr. Justice Paige, in McKnight v. Dunlap, 4 Barb., 42, says: "The extent of the doctrine of waiving the tort and bringing *assumpsit*, where goods have been tortiously taken, seems to be confined to the case of a sale of the goods by the wrong-doer, when doubtless the owner may waive the tort and have an action for money had and received for the proceeds." And this very accurate judge cites most of the cases herein referred to.

But Cowen, J., one of New York's most learned judges, in Berly v. Taylor, 5 Hill, 583, says: "If trover would have lain, it follows that an action for money had and received will lie for the price obtained on the sale, *or for the value, as goods sold and delivered, at the election of the plaintiffs.*

And in Butts v. Collins, 13 Wend., 154, Mason, senator, said, after a full review of the authorities: "Butts has, therefore, an election of actions against Collins; he can maintain trover or *assumpsit*, and, *in the latter action*, re-recover the value of the flannels under the common counts for money had and received, or *for goods sold.*" In Chambers v. Lewis, 2 Hill's, N. Y., Com. Pleas, 594, Brady, J., said: "It seems to be settled, upon principle and the weight of authority, that, where goods are wrongfully taken and detained the plaintiff may waive the tort, and bring an action upon an implied promise to pay for them." And it was said in Hinds v. Tweddle & Darlington, 7 How. Pr. R. 281, that: "Previous to the Code, the law was settled in this State, that the plaintiff might waive the tort in a case for the conversion of property, and declare in an action of *assumpsit* to recover the value;" *citing*, 1 Hill, 240, note; 3 Hill, 284; 5 Hill, 584, note a; 5 Denio, 370; 4 Cow., 412; 3 Wend., 158.

This subject is thus referred to in Fiquet v. Allison, 12 Mich., 332: "It is said in several of the cases, that, where property has been tortiously taken, and converted by *sale*, the owner may affirm the sale, and sue for the proceeds in

*assumpsit;* but that, where there has been a conversion without sale, the tort cannot be waived. It certainly is somewhat anomalous to place parties in contrast relations against their will, where no privity exists, and the cases *where it is permitted* seem to be justified only on the ground that no prejudice can result to the defendant in allowing it." That was an action of *assumpsit* for goods sold, while they were in the possession of the defendant, obtained by wrong. The court held that the plaintiff might, by their consent, convert the transaction into a sale, and declared that no principle of law was violated by allowing the action to be maintained in that form.

The supreme court of California, in Fratt v. Clark, 12 Cal., 90, says: " The appellant objects that the evidence does not sustain the allegations in the complaint. The objection is not tenable. It is well settled that where a person takes and sells the property of another, without authority, the party aggrieved may waive the tort and sue in *assumpsit* for the price received at such sale, or *for the value of the property so taken.*" And referring to the precisely similar language of Judge Cowen, *supra,* the court adds : " And a great many authorities, American and English, are cited in support of the doctrine." Prof. Greenleaf says : " If one commits a tort, by which he gains a pecuniary benefit, as if he wrongfully takes the goods of another and sells them, or otherwise *applies them to his own use,* the owner may waive the tort, and charge him in *assumpsit* on the common counts, as for *goods sold* or money received, which he will not be permitted to gainsay." 2 Greenl. Ev., § 108.

Thomas, J., in Walker v. Davis, 1 Gray, 509, says : " Ordinarily, in the case of torts, it is in the election of the owner of the property wrongfully taken to bring his action for the tort, or, waiving that, to bring *assumpsit,* and when he brings the latter, the defendant is estopped to say there was no promise, and that he took the property wrongfully, or to set up his own fraud or wrong in defense of the suit."

With reference to the election between *trespass* and *as-*

*sumpsit,* a remark in Cummings v. Noyes, *supra,* is quoted approvingly, in 1 Hill. on Torts, § 22, p. 26, viz.: That " an action in either of those forms may very well answer to present the question between the parties for legal adjudication." But in section 38 of the same volume, this author says : " It has been questioned whether any other form of *assumpsit* can be maintained, upon the ground of waiving a tort, than that for money had and received ; and the decisions and dicta, which favor this extended view of the remedy in question, have been closely criticised and seriously doubted."

The last paragraph of this quotation is itself open to criticism. While it is true that " it has been questioned whether any other form of *assumpsit* can be maintained, upon the ground of waiving a tort, than that for money had and received," it has not been seen that " the decisions and dicta which favor " the extension of the action to goods sold, when obtained by a tort, and while in the hands of the wrong-doer, " have been closely criticised," though the propriety of such extension has been " seriously doubted." Mr. Hilliard would have been more accurate if he had said that courts and jurists have doubted and hesitated, on this extension, though uniformly asserting that " in many cases," and under " circumstances," the form indicated might be adopted. *Vide* 1 Hill., 240, note A ; 3 ib., 282, note A ; 1 Met. & Perk. Dig., 274, 297, 298 ; 1 Stephens N. P., 285, 286, 346 ; Ch. on Cont., 18, 19, 477 ; 1 Leigh's N. P., 4, 5, 90 ; 2 Ph. Ev., 110, 111 ; 5 Hill., 584, note a ; 3 Dana, 550 ; 3 Monroe, 422 ; Little's Select Cas., 118 ; 3 Gray, 260 ; 6 Greenl., 323 ; 1 Marsh., 83.

The nearest to a definite and just rule observed in the course of this examination, is that the change in the form of the action shall not deprive the defendant of any benefit secured to him in an action *ex delicto.* Cowper, 414 ; 1 Camp., 285 ; 8 Bing., 43 ; 44 Miss., 423, etc.

In regard to such a rule, it is said in Hinds v. Tweddle & Darlington, 7 How. Pr. R., 281 : " The true rule is stated in

Young v. Marshall, 8 Bing., 43, which is, that no party is bound to sue in tort, where, by converting the action into an action of contract, he does not prejudice the defendant. Generally speaking, it is more favorable to the defendants to be prosecuted upon contract than tort, for that form of action lets in a set-off, and also releases the body from imprisonment on the judgment. The plaintiff in such case waives his claim to damages for a wrong committed by the defendant, and seeks to recover *only the proceeds, or the value of the property. It would be difficult to find a case in which the defendant would be prejudiced by a waiver of the tort and resorting to the implied contract.*"

The opinion in Young v. Marshall, 8 Bing., was by Tindall, Chief Justice, and his language is, that " no party is bound to sue in tort, where, by converting the action into an action of contract, he does not prejudice the defendant; and, generally speaking, it is more favorable to the defendant that he should be sued in contract, because that form of action lets in set-off, and enables him to pay money into court." 5 Hill., 584, note a.

Great stress was laid by the court in Lindon v. Hooper, upon the fact that, by the substitution of *assumpsit* for trespass " the defendant would be laid under a great difficulty." It was said, " he might be surprised at the trial; he could not be prepared to make his defense; he could not tell what sort of right of common or other justification the plaintiff might set up ; the plaintiff might shift his prescription as often as he pleased; or he might rest upon objections to the regularity of the distress. The plaintiff can never be suffered to elect to throw such a difficulty upon his adverse party." Lord Mansfield said, the case was " not within the *reason* of any, in which, hitherto," the plaintiff had been allowed to waive the trespass and bring *assumpsit.* And in concluding the opinion of the court, he says: " We think, to allow it, would not tend to the furtherance of liberal justice, but would be a prejudice to the defendant, and, in a public view, inconvenient."

From this examination, it is shown that some of the cases hold that *assumpsit* for goods tortiously taken will lie only for the money or price for which they are sold by the wrong-doer, and will not lie for goods sold.   Nevertheless, that it is uniformly declared that, in " many cases," the tort may be waived and *assumpsit* for goods sold, substituted; that frequently " there are circumstances accompanying the transaction which will authorize the plaintiff to consider it a contract;" that the " old rule " has been " gradually re-laxed;" that the " modern authorities " have " established " a departure from the earlier adjudications; and that courts and jurists of the highest authority have declared that the action in the case stated may be for money had and received, or for goods sold.

No valid grounds are perceived why the view stated in Young v. Marshall, or in Hinds v. Tweddle & Darlington, is not one founded in wisdom, justice and reason, nor why it might not, at least, without disadvantage to private rights or public convenience, be adopted as a general rule; cer-tainly in " many cases " and under " circumstances," is inti-mated in the authorities.

Leaving, however, for further consideration, the question thus far discussed, whether the rule stated by some of the cases, that *assumpsit* for goods tortiously taken, will only lie for the money received on their sale by the tort-feasor, is not too limited for the purposes of justice, and to what ex-tent the remedy for goods sold may be extended, the case at bar will be more directly considered and determined.

It is undoubtedly a well settled rule, that *indebitatus assumpsit* lies for goods which the defendant has, by fraud, procured of the plaintiff, to sell to an insolvent, and which the defendant has got into his possession.   The earliest case at hand is that of Hill v. Perrott, 3 Taunt., 273.   The action was for goods sold.   The evidence disclosed a swindling transaction.   The goods were sold and delivered to one Dacosto, and afterwards were found in the defend-ant's possession.   It was held, " that the law would imply a

contract to pay for the goods, from the circumstance of their having been the plaintiff's property, and having come to the defendant's possession, if unaccounted for; and he could not be permitted to account for the possession by setting up the sale to Dacosto, which he had himself procured by the most nefarious fraud, because no man must take advantage of his own fraud; therefore *indebitatus assumpsit* lay for the goods, and the verdict could be supported."

The rule is stated in Chitty on Pl., 101, that " *assumpsit* lies for the value of goods, which the defendant, by fraud, induced the plaintiff to sell to an insolvent person, and afterwards obtained for his own benefit."

In 4 Ph., Ev., 110, this doctrine is declared: " In some cases, where goods have been wrongfully taken, the plaintiff may waive the tort, and sue upon an implied contract, as for goods sold and delivered.   Thus, where a person gets goods into his possession by fraudulently procuring the plaintiff to supply them to an insolvent, or to his own son, who is a minor."   And in vol. 2, p. 111, Mr. Phillips says: " It is not to be understood that an action of trover can be converted into an action for goods sold and delivered *at the option of the plaintiff;* the rule seems to be *principally* applicable to cases where the plaintiff has been induced by a fraud on the part of the defendant to make a contract with a nominal party of which the defendant derived the whole benefit."

Thus Mr. Phillips clearly indicates, that the rule that a plaintiff may waive a tort, and sue for goods sold, is not limited exclusively to the case put by him, though he says it is *principally* applicable to such a case.   And when he says the form of the action cannot be changed " at the option of the plaintiff," he but expresses the idea running through all the cases on the subject, that when tort may be waived and *assumpsit for goods sold* substituted, is uncertain, and as yet undefined.

In applying the facts of the case at bar to the rules last referred to, a restatement of the main points of the evidence may be here given:   Cohen was the general agent of Isaacs;

the store at Ashland, conducted by Cohen, was in the name of and owned by Isaacs; the goods purchased of Wolfe, by Cohen, were placed on the shelves of that store and mixed with other goods of Isaacs; Lewis was the clerk of Isaacs, in the store of the latter, at Natchez; Wolfe was concealed in the house of Lewis when search was made for him by the agent of the plaintiff in this action; of this, and that he had sent him out of the country, Lewis boasted at the store, to the witness, Herts, and in the presence of Isaacs, as is supposed; the combination to defraud the plaintiff, and other Vicksburg merchants, was fully developed in the letter read by Lewis, in the presence of Isaacs, to the two brothers, Herts, though this letter was never forwarded to its destination; the purchase of the goods sued for was a gross swindle, and this was unquestionably known to Cohen when he received the goods of Wolfe, even if he did not contribute to the fraud; all the facts were made known to Isaacs a few days after the purchase by Cohen; and it is most significant, that the extraordinary revelations in the conversations at the store of Isaacs, were not denied at the time, and were substantially admitted on the trial, as neither Isaacs, Lewis, Cohen, nor any other witness, was called to testify by Isaacs on the trial of their cause.

Although no act of Isaacs contributing to the fraud, prior to its consummation, is shown, beyond the combination disclosed in the letter which was read, and destroyed by Lewis, in presence of Isaacs and the two Herts; nevertheless, in this action, the agency of Cohen is fully established; his participation in the fraud, also, can scarcely be doubted; he well knew the worthlessness of Wolfe; yet contributed to his credit in Vicksburg, and doubtless for the purpose which was accomplished when Wolfe turned over to him the goods he had defrauded of the plaintiff, and his full knowledge when he received the goods of Wolfe, that their purchase was a gross swindle, is beyond question; all which came to the knowledge of Isaacs, while the goods were yet on the shelves of his store, and Wolfe was within reach of an inter-

view, through his confidential clerk, Lewis, who was knowing to, if not a participant in the fraud on the plaintiff; and besides, to the evidence of a combination between Isaacs, Lewis, and Cohen, to defraud the Vicksburg merchants as disclosed in the evidence, no denial, save that of silence, is interposed.

Under such a state of facts, in effect conceded to be true, by the defendant, and substantially so found by the jury, shall the principal be allowed to point to the goods on his shelves, and reap the benefit of the fraud, under the plea, that the transaction was managed by his agent? With the money of Isaacs, the agent gave Wolfe a fictitious if not a fraudulent credit. The agent received the goods of Wolfe, and placed them on the shelves of Isaacs' store. The goods had been the property of the plaintiffs. They were found in the possession of defendant, unaccounted for. Shall he be permitted to set up the sale to Wolfe, to which his agent had contributed, if he did not procure it? But, if neither procured nor contributed to the fraud, yet the agent received the goods, knowing their purchase to have been a gross fraud, and shall the' principal be permitted to retain them unaccounted for?

To exempt Isaacs from responsibility, *civiliter*, would necessitate too nice a distinction for the ends of justice. If he procured or had contributed to the fraud, on plaintiffs, there would be no question as to his present liability. Can he hold the goods unaccounted for, and drive the plaintiffs to look to the agent for the payment of their goods?

Isaacs is not a purchaser in good faith. Such a claim would be the sheerest effrontery, and, from the beginning to the end of this controversy, it is not discovered to have been set up or pretended. In view of the evidence, the defendant occupies a position like one in possession of stolen goods, without explanation. His liability is upon the basis of a fraud, and yet he is silent. He neither took the stand himself, nor introduced his clerk, Lewis, nor his agent, Cohen, to contradict the statements of the witness, Herts, and hence

the most violent if not the absolute presumption of their truth.

In the case at bar, the defendant was deprived of no advantage by the form of the action. In the one adopted the scope of defense was as broad as in the more usual action of case. Not the remotest prejudice inured to the defendant, because of the form of the action. The "furtherance of liberal justice" was not thereby impeded. Nor were any principles of law invaded. And, " in a public view," it cannot be said in this, as in Lindon v. Hooper, that the form of the action is " inconvenient." The rights of the defendant were as completely protected, and the merits of the controversy were as fully, fairly, and freely investigated and determined, in this form of action, as they could have been in any other.

The result in the court below was evidently just.

Judgment affirmed.