## JOHN REED ET AL. V. CALVIN MCRILL.

FILED JUNE 6, 1894. No. 5296.

1. **Conversion:** PLEADING. In order to state a cause of action for conversion it is sufficient to allege ownership generally without stating how such ownership was acquired.

2. **Tenancy in Common.** Where there is a contract between the owner of land and another person whereby such other person is to cultivate the land and harvest the hay for a share thereof, but where the relation of landlord and tenant is not created, and there is no specific agreement as to the possession of the land, the parties become tenants in common of the grass and hay.

3. **Trover and Conversion.** In such a case if one of the parties to such contract seize the whole crop either before or after severance, and dispose of it in denial of the other's rights, the other may maintain trover for his share.

4. **Special Findings:** DISCRETION OF COURT: REVIEW. The submission of questions to the jury for special findings is a matter within the discretion of the trial court, and the submission or refusal to submit such questions will not be reviewed except for abuse of discretion.

ERROR from the district court of Valley county.  Tried below before HARRISON, J.

*Nightingale Bros.*, for plaintiffs in error.

*A. M. Robbins, contra.*

IRVINE, C.

McRill sued the plaintiffs in error, alleging that in the months of July, August, and September, 1890, McRill was the owner and in possession of three-fourths of all the grass and hay then standing and growing on a certain quarter section of land described in the petition; that said hay was seventy-five tons and of the value of $600; that the plaintiffs in error, against the will and consent of Mc-Rill, cut down and converted to their own use all of such grass and hay.   There was a verdict and judgment for McRill, from which error is prosecuted.

The assignments of error are quite numerous, but the plaintiffs in error in their brief have made a logical analysis of the case, and we shall follow that discussion rather than the petition in error.

The plaintiffs in error, in the first place, contend that it was incumbent upon McRill to allege and prove title or right of possession to the growing grass by virtue of an estate in the land or by virtue of some contract giving him the title or possession of the grass.   This principle is undoubtedly correct, and the trial court instructed the jury in accordance therewith.   But plaintiffs in error argue that the petition was insufficient to state the basis of the right of action, and they therefore moved to require Mc-Rill to make his petition more specific by stating how he acquired title, the nature of his possession, and whether actual or constructive, and certain other things which we do not understand they now insist upon.   This motion was overruled.   We do not think there was any error in

this ruling.   The statutes require in cases of ejectment and replevin only general allegations of title, and we are not aware of any principle of pleading under the Code which requires a specific statement in actions either of trespass or trover.   On the contrary, the Code expressly requires a statement of the facts upon which the right of action is based and not a pleading of the evidence.   To have sustained the motion would have required the plaintiff below in effect to have pleaded the evidence to sustain his allegation of ownership instead of the principal fact of ownership.   The chief ground upon which plaintiffs in error base their argument is that the petition left them uncertain as to whether the action was trespass *quare clausum* or trover. We do not think that any such uncertainty arises.   That forms of action are not recognized under the Code of Civil Procedure is elementary, and the form of the petition was, therefore, unimportant.   There was no allegation of either ownership or possession of the land, but only of three-fourths of the grass and hay thereon.   By any reasonable construction the petition must be treated as an action for the conversion of the grass and hay.   We cannot see that this was open to any doubt.   The plaintiffs in error moved to strike out all the allegations in regard to the hay. We presume this motion was based upon the distinction between the terms "grass" and "hay," and upon the theory that any action relating to the grass related to the real estate and required an estate in the land to support it, while the term "hay" referred to the grass after it had been severed and cured and had become personal property.   But growing grass is not in all cases a part of the realty.   Cases may arise where before severance it belongs to a person other than the owner of the fee, or even the owner of a possessory estate.   This ownership may depend upon contract, as we shall hereafter show.

Plaintiffs in error next argue that if a lease to McRill was established by the evidence it was unlawful, and for

that reason no action could be maintained. This is upon the theory that the plaintiff in error, John Rapp, Jr., had entered the land under the timber culture act; that this act required the entryman to perform certain acts upon the land, and that if there was a lease it operated to give Mc- Rill the exclusive possession, and therefore prevented the entryman from performing his contract with the United States. In the first place we can find no evidence sufficient to sustain this theory. There is parol evidence tending to show that John Rapp, Jr., had entered the land under the timber culture act, but the nature of his title at the time of the acts complained of nowhere appears. In the second place there is no evidence in any part of the record of any contract with or lease to McRill which would exclude the entryman from possession or which contemplated a breach of the conditions of the entry.

Indeed, we have presumed that the next argument of plaintiffs in error is well founded,—that there was no evidence tending to establish a lease of the land,—and from this it follows that their following argument is also sound, to-wit: That the contract, which the evidence tends to establish, was for a share of the crops and not for any estate in the land. These two points will be considered together. The evidence in behalf of McRill tends to show that Mc- Rill had cultivated a portion of the land in 1888 and 1889. The agreement of 1888 was immaterial; but there is evidence justifying the jury in finding that the agreement in 1889 was that he was to cultivate portions of the land and retain all the crops, and that he was to put up the hay and receive three-fourths thereof and give Rapp one-fourth. The evidence is distinct that John Rapp, Sr., conducted all the business in relation to the land, and that his acts as general agent were fully authorized by John Rapp, Jr. McRill and his wife testify that in the spring of 1890 a third Rapp appeared, the nephew of John Rapp, Sr. He stated that the elder Rapp had instructed him to tell Mc-

18

Rill he could have the place on the same terms as the year before. Mrs. McRill said they would not take the place unless they could have the hay, and the nephew stated that his instructions were that McRill could have the place, "hay and all, just the same as you had it last year." There is no doubt that the hay was harvested by Reed under agreement with the Rapps, that it was carried away and disposed of without the consent of McRill. Passing by for the present the question of the nephew's authority, we are led to a consideration of this contract. The argument of plaintiffs in error is that no lease being established there was nothing possible except a cropping contract which would convey no right to McRill to the grass or hay until after it had been severed and possession actually taken, and that, therefore, neither trespass nor trover would lie. The determination of the rights of the parties under such a contract is often difficult, but more as a question of fact than as a question of law.

In *Warner v. Abbey*, 112 Mass., 355, the court said : "In construing contracts for the cultivation of land at halves it is impossible to lay down a general rule applicable to all cases, because the precise nature of the interest or title between the contracting parties must depend upon the contract itself, and very slight provisions in the contract may very materially affect the legal relations of the parties, and their consequent remedies for injuries as between themselves. In some cases, the owner of the land gives up the entire possession, in which event it is a contract in the nature of a lease, with rent payable in kind; in other cases, he continues to occupy the premises in common with the other party, or reserves to himself that right, and so a tenancy in common to that extent is created, and each is entitled to the joint possession of the crops, or the possession of the one is the possession of the other until division; or he may retain the sole possession of the land, and the other party may have the right to perform the labor and

receive half the crops as compensation; or the two parties may become tenants in common of the growing crops, while no tenancy in common as such exists in the land." The nature of such an agreement must be determined by the facts of each case. (*Johnson v. Hoffman*, 53 Mo., 504.) Where a lease was canceled and afterwards the landlord told the tenant to put in and harvest fall wheat and promised that the tenant should have his just share of it, it was held that they were tenants in common of the wheat, and that the tenant, where the landlord kept the wheat himself, might maintain assumpsit for his share. (*McLaughlin v. Salley*, 46 Mich., 219.) The supreme court of Illinois has held that a letting of land for the purpose of raising a single crop does not necessarily raise the relation of landlord and tenant, but where such relation is not raised the parties are tenants in common of the crop. (*Alwood v. Ruckman*, 21 Ill., 200.) Other cases holding that similar agreements constitute the parties tenants in common of the crop, and not landlord and tenant, are *Taylor v. Bradley*, 39 N. Y., 129; *Guest v. Opdyke*, 31 N. J. Law, 552; *Fiquet v. Allison*, 12 Mich., 328. It was so held in the last case, even though the contract was for possession in the person doing the work.

We are quite satisfied that the contract which McRill's evidence tends to establish, created McRill and Rapp, Jr., tenants in common of the grass and hay. Ordinarily, trover will not lie by one tenant in common against another, but this rule ceases where there has been an ouster, as where one tenant in common has destroyed the property or where he has sold it to a stranger in denial of his cotenant's rights. (*Burbank v. Crooker*, 7 Gray [Mass.], 158; *Weld v. Oliver*, 21 Pick. [Mass.], 559; *Carr v. Dodge*, 40 N. H., 403; *Fiquet v. Allison, supra.*) The last two cases cited were upon contracts similar to that under consideration. Our conclusion is, therefore, that where there is a contract between the owner of land and another person, whereby

such other person is to cultivate the land and harvest the
hay for a share thereof, but the relation of landlord and
tenant is not created and there is no specific agreement as
to the possession of the land, the parties become tenants in
common of the crops, grass and hay, and if one of the
parties seize the whole of the property, either before or
after severance, and dispose of it in denial of the other's
rights, the other may maintain trover for his share.

This brings us to the question of agency. It is true, as
contended by plaintiffs in error, that there is not a particle
of evidence to show that the nephew, when he went to Mc-
Rill, had any authority to contract for the hay. All the
direct evidence is that his instructions were to employ Mc-
Rill to cultivate the tilled land, one-half in corn and one-
half in millet, and that the Rapps were to have the hay.
But the testimony of McRill discloses two conversations
subsequently had with Rapp, Sr., whose authority is un-
disputed, and which, if believed, would constitute a ratifi-
cation by distinctly recognizing McRill's right to three
fourths of the hay. There is no question of the authority
of Rapp, Sr., to delegate his authority. The boy's errand
was confessedly a special agency, and the court instructed
the jury that he could only bind Rapp, Jr., to the extent
of the authority actually conferred; but Rapp, Sr.'s,
agency was general and is undisputed, and his ratification
of the boy's act was binding upon Rapp, Jr., and would
have been so had the boy's action been entirely voluntary
and without any authority. Upon all of these points, and
in fact upon every point in the case, the evidence is not
only contradictory, but is conflicting to a bewildering ex-
tent. The jury was, however, justified in believing the
testimony to which we have referred.

We will not notice in detail the instructions asked by
plaintiffs in error and refused. They were for the most
part embodied in instructions given by the court. Many
of them were objectionable as narrating evidence and being
argumentative upon the evidence and for infringing upon

the province of the jury. One or two which stated the law correctly were almost legal treatises, intelligible and instructive to a lawyer, but of such a nature as to be confusing to the minds of jurors not trained in the law and unfamiliar with the refinements of land tenures and common law pleading and practice. So far as the instructions were not in conflict with the views we have expressed, their substance was given by the court in direct untechnical language, and as specifically as could be safely done without invading the domain of the jury.

The plaintiffs in error complain that the court refused to submit a number of special questions to the jury. The submission of questions for special findings is within the discretion of the trial court. (*Floaten v. Ferrell*, 24 Neb., 347; *Nebraska & Iowa Ins. Co. v. Christiensen*, 29 Neb., 582.) We do not think that there was any abuse of discretion in this case. The facts were simple, and the district court did not err in leaving them to the determination of the jury for a general verdict under appropriate instructions as to the law.

It is finally contended that the court should have dismissed the case without prejudice as to the two Rapps, for the reason that they resided in Sherman county, were there served with summons, and that the verdict was such as to bring the action within the jurisdiction of a justice of the peace. If, since the case of *Pearson v. Kansas Mfg. Co.*, 14 Neb., 211, there remains any doubt as to the applicability of section 65 of the Code of Civil Procedure to justices of the peace, the question is not raised in this case. The record shows a petition and then the appearance of all the defendants, first by motion and then by answer, without any objection to the jurisdiction. There is nothing to show where they were served with summons, or that their appearance was not voluntary.

JUDGMENT AFFIRMED.

HARRISON, J., took no part in the decision.