REYNOLDS, APPELLANT, *v.* FITZPATRICK ET AL., RESPONDENTS.

[No. 1,098.]

[Submitted April 25, 1899. Decided June 12, 1899.]

*Chattel Mortgage—Affidavit of Good Faith—Verbal Mortgage Between Parties—Conversion—Pleading—Demand.*

1. A statement, signed by all the parties to a chattle mortgage, but the jurat of which does not bear the signature or seal of the officer before whom it was sworn to, is not a sufficient compliance with Civil Code, § 3861, providing that chattle mortgages shall be void unless accompanied by an affidavit of all the parties thereto, or their agents or attorneys in fact, stating that the mortgage was made in good faith, and without any design to hinder, delay, or defraud creditors.

*Semble.*—In an affidavit of good faith, the several words "hinder," "delay," and "defraud," are essential to the validity of the mortgage.

2. A verbal mortgage of chattels is as binding between the parties thereto as it would be if expressed in writing.

3. R. sold personal property to C., and took a mortgage for the purchase price. After C. had paid a part of the purchase price, he, with the consent of R., sold his interest in the property to H., who agreed to pay R. the balance of the price agreed by C. to be paid to R. *Held*, that it was not necessary that R. should have possession to convey title to H.

4. A mortgagee can maintain an action of conversion against one who takes the mortgaged property from his mortgagor after default in the conditions of the mortgage, where the mortgage provides that the mortgagee shall be entitled to possession on default in the conditions of the mortgage.

5. In an action for conversion it appeared that plaintiff sold certain personal property, and took a mortgage to secure payment, and, after the mortgagors had paid a part of the price, they, with the consent of the mortgagee, sold their interest to another, who orally agreed to pay the mortgagee the balance due, and accept the property subject to the terms of the mortgage. The mortgage was void as to creditors of the mortgagor, because not accompanied by an affidavit of good faith. The property was delivered by the mortgagors to the second purchasers, and it was thereafter levied upon by defendants in a suit by creditors of the former. The mortgage, by its terms, provided that the mortgagee should be entitled to the immediate possession of the property if attached by creditors of the mortgagor. *Held*, that it was error to grant defendant a nonsuit on the ground that plaintiff had no title or right to possession which would support conversion.

6. A complaint in an action for conversion, which avers that plaintiff is the owner of the property described, states its value, and the acts of defendant which deprive him thereof, and asks damages, is sufficient, and need not aver that defendant did any wrong.

7. In an action for the conversion, where the taking is wrongful, it is not necessary to allege a demand before the commencment of the action.

*Appeal from District Court, Deer Lodge County; Theo. Brantly, Judge.*

ACTION by J. B. Reynolds against John Fitzpatrick and another, as sheriff and deputy sheriff. From a judgment in favor of defendants, plaintiff appealed. Reversed.

*Mr. H. R. Whitehill,* for Appellant.

*Mr. W. H. Trippet,* for Respondents.

**MR. JUSTICE HUNT** delivered the opinion of the court.

This action is for damages for the conversion of certain personal property by the defendants as sheriff and deputy sheriff of Deer Lodge county.

Plaintiff stated his cause of action in two counts; in the first, after alleging the official capacities of the defendants, he set up that on August 23, 1895, Maddux and Clark executed their promissory note to plaintiff, wherein they promised to pay to him or order $1,300, with interest, and that on the

same day, to secure the payment of the note, they executed and delivered to plaintiff a chattel mortgage upon certain saloon property. It is alleged that Maddux and Clark did not pay the note, and that on December 2, 1895, the defendants, under and by virtue of certain writs of attachment issued out of a justice's court in actions against Maddux and Clark, attached and took into their possession the personal property described in the chattel mortgage, and that the defendants did not pay or tender to plaintiff the amount of his mortgage debt, with interest, or any part thereof, or deposit the amount thereof with the treasurer of the county, before they attached. Plaintiff pleaded a demand and refusal of payment, and asked judgment for $1,300, the value of the property.

For a second cause of action, after referring to the facts set out in his first cause, and making them part of the second cause of action, plaintiff alleged that it was provided by the terms of the chattel mortgage referred to that in case of default of payment of the principal or interest, as provided in the promissory note of Maddux and Clark, plaintiff was empowered and authorized to sell all of the goods and chattels described in the said chattel mortgage in the manner prescribed by law; that, by the terms of the promissory note, $100, with interest, was agreed to be paid by Maddux and Clark to plaintiff on December 1, 1895, but that the said sum was never paid; that it was also expressly provided by the terms of the mortgage that, if default was made in the payment of the principal or interest, as provided in the said note, or if, prior to maturity of the said promissory note, the property described in the said mortgage, or any part thereof, should be attached, seized or levied upon by or at the instance of any creditor or creditors of Maddux and Clark, then, and in such event, or in either of such events, Reynolds, the mortgagee, should have the right to immediate possession of said goods and chattels, and of the whole and every part thereof. The complaint further alleged that on December 2, 1895, the property described in the mortgage was attached, levied upon, and

seized by the defendants, at the instance of Collins & Co., creditors of Maddux and Clark, the mortgagors, and that, by reason of said property having been attached, levied upon, and seized by the defendants as aforesaid, plaintiff became and was at the time of the attachment, levy and seizure entitled to the immediate possession of the property included in the mortgage; that at the time of said levy, attachment and seizure plaintiff was the owner, in possession of, and entitled to the possession of, the said goods and chattels, and that before the commencement of the suit he demanded of defendants possession of said goods and chattels. He then alleged that "by reason of the premises, and the defendants having obtained possession of said goods and chattels in the manner aforesaid, said defendants wrongfully converted and disposed of to their own use the property hereinbefore described, to the damage of plaintiff in the sum of $1,300." Judgment was asked against defendants, and each of them, for $1,300, with interest from December 2, 1895.

The defendants, by answer, admitted the seizure and sale of the property, but denied plaintiff's ownership, and denied the facts relating to the alleged conversion, and justified their action under the proceedings had in the justice's court on the ground that the mortgage was void as to the creditors of the mortgagors, because of certain defects in the affidavit of good faith required under the statute.

Plaintiff, by replication, admitted that the proceedings were had in the justice's court under which the writs were issued, whereby the defendants seized the property, but alleged that the judgments were void, and of no effect, because the complaints therein did not state facts sufficient to constitute causes of action, and that the justice had no jurisdiction of the persons of the defendants or of the subject-matter of the actions referred to.

Upon these issues the case went to trial before the court and a jury. Plaintiff offered the chattel mortgage in evidence. Defendants objected upon the grounds that the affidavit required by the statute (Section 3861, Civil Code), was lacking.

An inspection of the mortgage discloses that the purported affidavit reads as follows:

"Geo. M. Clark, S. H. Maddux and J. B. Reynolds, the parties to the foregoing chattel mortgage, being severally duly sworn, each for himself, says that the said chattel mortgage is made in good faith to secure the amount named therein, and without any design to hinder or delay the creditors of the said mortgagors.    [Signed]                "S. H. MADDUX,

                                   "GEO. M. CLARK,

                                   "J. B. REYNOLDS.

"Subscribed and sworn to before me this, the 23d day of August, A. D. 1895.                "——————————,

          "Notary Public in and for Deer Lodge County."

The particular objections of the defendants were that the words "or defraud" were left out of the purported affidavit after the words "hinder or delay," and, furthermore, that there appeared no signature of any officer to the jurat. The plaintiff offered to prove by the notary before whom the acknowledgment was taken that the affidavit was in fact sworn to by the mortgagors, Maddux and Clark, and the mortgagee, Reynolds, but that he omitted to sign his name. The court would not allow this proof to be introduced, and held that under the first cause of action the mortgage was inadmissible, because it was void—First, for lack of an affidavit; and, secondly, because the words "or defraud" were left out; but ruled that the mortgage was admissible under the second cause of action, provided the plaintiff would follow its introduction by showing that he was in possession of the property at the time of the levy.

The mortgage, which in its body is in the common form of statutory chattel mortgages, was made to secure the payment of the promissory note of Maddux and Clark to Reynolds for $1,300, payable as follows:    $100 was to be paid on October 1, 1895, and $100 on the first of each and every month thereafter until paid, with interest at the rate of 1 per cent. per month from date until paid. The mortgagors had the right to remain in posession and to use the property until default,

provided, if default occured in the payment of the principal or interest, or, if, prior to the maturity of the indebtedness, the property should be attached, seized, or levied upon at the instance of any creditor of the mortgagors, the mortgagee should have the right to the immediate posession of the property, and should have the right, at his option, to take and recover such property from any person or persons having or claiming the same.

Plaintiff, Reynolds, testified that Clark and Maddux bought the property from him, and gave him a mortgage to secure a note for $1,300, payable as heretofore set forth; that they paid $100 at the end of the first month, and $100 on November 1st; that about December 2d he asked Clark, who had succeeded Maddux and Clark, for $50, the amount due on the note on December 1st, not having been paid as required by the agreement; that Clark paid the $50 to plaintiff, which left a balance of $50 due and unpaid for December. One Hall met plaintiff about that time, and told him he was talking of buying Clark out. Plaintiff assented to a sale by Clark to Hall, and says he agreed with Hall that Hall might buy the property, and own it when he paid him (Reynolds) $1,300 at $100 a month. Hall then went to take possession. On cross-examination Reynolds said that the property had been transferred by Clark to Hall without there ever having been a delivery of possession to him (plaintiff) by Maddux and Clark; that is, that it was transferred directly by Clark to Hall, with Reynolds' consent. He said that he notified the attaching creditors that the chattels seized were his property until he got his pay, and that he had a mortgage on the property, under which he claimed the property until it was paid for; that he referred to the mortgage of Maddux and Clark, and that he had had a like agreement between himself and Maddux.

John A. Hall testified that on the 2d day of December, and before the levy by the defendants, he bought Clark out, and paid him for his interest in the property, took possession and was in the actual possession of the property at the time of the

levy by the defendants; that he had seen the plaintiff a few days before his purchase from Clark, and asked him how much was due on the mortgage from Clark and Maddux to him, and then told plaintiff that he was negotiating with Clark to buy him out. Witness stated that Reynolds told him to go ahead; that he would rather that witness had the property than Clark; that thereafter witness bought Clark out, and agreed with Reynolds to pay him (Reynolds) the balance on the mortgage, and that he then took possession of the property. "I was to pay Reynolds for the property," said Hall, "and when I got it paid for it was mine. It was just the same as though I owned it, only there was a mortgage. Reynolds held the mortgage, and Reynolds could take it away from me at any time I defaulted in the payment. * * * I agreed to pay Mr. Reynolds for the property just on the terms that were in the mortgage. I took their (Clark's and Maddux's) statement for that. I never saw the agreement. I took their statement for the amount that was due on the mortgage. Reynolds told me how much had been paid on the mortgage,—$250, I believe. There was $50 lacking. Clark told me that. He said he ought to have paid Reynolds $100, but he had only paid him $50. That was on the 1st of December. I sent over to Reynolds' house that day. * * * I wanted to pay him that other $50, * * * but he was not at home. * * * At the time of the attachment Maddux and Clark did not have any interest whatever in this property. When I paid Reynolds for it, I owned it just the same as Clark would have done if he had paid Reynolds. That is all there was of it. I took his place in the mortgage, and bought the stock that he had on hand, and paid him for it, and I agreed to pay Mr. Reynolds the amount that Mr. Clark had agreed to pay him, and it was with that understanding that I took possession of the property." Witness said that he was in possession at the time the sheriff made the levy, and that he told the sheriff at the time that the property was mortgaged, and that he could not attach it, because it belonged to witness. On cross-examination witness said that he claimed to be the sole owner of

the property at the time of the attachment; that he bought
the property subject to the mortgage by Maddux and Clark to
Reynolds, and was to pay off the mortgage.    On redirect ex-
amination witness said that he had received a bill of sale from
Clark.    This bill of sale was introduced in evidence.    It re-
cited that Clark had sold and delivered to John A. Hall his
right, title and interest in and to the saloon business and
property for the sum of $250.    No date appears on the bill
of sale.

The foregoing was the principal testimony in the case.
Plaintiff then rested, whereupon the defendants moved the
court for a nonsuit, because there was no evidence to show
that plaintiff was at any time after the execution of the mort-
gage in the possession or the owner of the property mentioned
in the complaint, and that it was not in the possession of the
plaintiff at the time it was levied upon by the sheriff, and be-
cause there was no evidence to show that the plaintiff was the
owner of the property.    The court sustained the motion.
Judgment was entered for defendants for their costs.    Plain-
tiff appeals from the judgment.

1.    The exclusion of the mortgage under plaintiff's first
cause of action was correct.    As against creditors of the
original mortgagors, Clark and Maddux, it was wholly void,
because it was not accompanied by any affidavit at all of all the
parties thereto, or of their agents or attorneys in fact, that
the mortgage was made in good faith to secure the amount
named therein, and without any design to hinder, delay, or
defraud creditors.    (Section 3861, Civil Code.)    An affidavit
is defined to be "a written declaration under oath, made with-
out notice to the adverse party."    (Section 3321, Code of
Civil Procedure.)    By this definition an affidavit is not only a
written declaration, but it must be made under oath.    If either
requirement is lacking, it is incomplete; and, unless amend-
ment be allowed,—as it may, perhaps, in attachment or other
proceedings, where the purpose of the affidavit is not to impart
notice,—the defect is generally fatal to the affidavit.    The
authenticity of the fact that the declaration has been made

under oath is evidenced by the signature of an official author-
ized to administer oaths to the jurat.    Without such authenti-
cation, however, the mere signed declaration of the parties is
entirely ineffective to constitute a valid affidavit of good faith
accompanying the mortgage.    (*Alford* v. *McCormac*, 90 N.
C. 151; *Westerfield* v. *Bried*, 26 N. J. Eq. 357.)    The specific
provisions of the statute concerning the affidavit of good faith
necessary to a chattel mortgage are so plain that it becomes
our duty to hold they must be complied with, or the mortgage
will be void.    The statute and decisions of this court, as well
as principle, demand a strict construction of the law which
makes a mortgage of personal property *void* against creditors
of the mortgagor *unless* it provide that the property remain
in the possession of the mortgagor, *and be accompanied by* an
affidavit that the same is made in good faith, and without any
design to hinder, delay, or defraud creditors, and unless it is
acknowledged and filed as provided by law.    (*Baker* v. *Power*,
7 Mont. 326, 16 Pac. 589; *Marcum* v. *Coleman*, 10 Mont. 73,
24 Pac. 701.)

The mortgage under consideration had no signature or seal
to the jurat.    It therefore appeared to have no affidavit
accompanying it, and, although filed in this condition, such
filing could not supply the omission to comply with a material
provision of the statute.    Creditors going to the files and rec-
ords of a county, and finding a mortgage like the one under
examination, would at once conclude that no oath had been
administered to the parties; hence that the mortgage was not
such as the law required.    On principle, therefore, this mort-
gage cannot be held valid as against *bona fide* creditors, with-
out ignoring the statute, and it was properly excluded.

In *Hill* v. *Gilman*, 39 N. H. 88, the court expressed its
opinion upon a chattel mortgage which failed to contain a cer-
tificate of any oath signed by a justice, as was required by
the statute of the state.    The mortgage was held invalid
against a *bona fide* creditor who attached the property, the
court saying:

"It appears to us that to hold this to be a good mortgage

as against the defendant, who stands in the position of a *bona fide* creditor of the mortgagor, would be to evade, if not, indeed, to override, a material provision of the statute. If this requirement can be dispensed with without affecting the validity of the mortgage, then may others also. Suppose the parties should take the oath, but through inadvertence neglect to sign it; or suppose the affidavit should be made upon a paper distinct from the mortgage, and, by some mischance, not be attached to it, and the mortgages, with these defects, be recorded, are we to hold them good against creditors? Other suppositions could be made by which other requirements might be neglected, and, by following the principle out, we might, perhaps, find ourselves back to the common-law mortgage. To carry out the intention of the legislature, we think that all the material requirements of the statute must be complied with; that the certificate of the justice who administered the oath is a matter material to be made and recorded; and that, inasmuch as it was not done in the present instance, the mortgage was invalid as to the creditor.''

The affirmance of the ruling of the learned judge excluding the mortgage for the lack of a proper jurat renders it unnecessary to decide whether or not the omission of the words ''or defraud'' from the affidavit was fatal to the validity of the mortgage. We pass that point, observing, however, that the statute seems to have intended a separate significance to be attached to the several words ''hinder,'' ''delay,'' and ''defraud,'' and that each is required.

2. Advancing next to the ruling whereby defendant's motion for a nonsuit was granted, we must define the attitudes of the parties as disclosed by the evidence, for by doing so the case resolves itself into one of comparative simplicity. The testimony of Reynolds, the plaintiff, is somewhat mixed, impressing us as honest, but given under some apprehension, lest the legal results of his statements in respect to his exact position towards Hall and defendants might deprive him of the value of the property he once sold to Maddux and Clark, and for which he had never been paid. But, when considered

with Hall's statements, the manifest tendency of the evidence was to prove that Reynolds sold the property to Clark and Maddux. They then mortgaged back to Reynolds, agreeing to pay $100 a month on the 1st of each month until the debt due by them was fully paid. They defaulted in the December payment. Negotiations were then pending between Clark and Hall for a sale by Clark of the Clark and Maddux interest to Hall. Hall, knowing of a mortgage to Reynolds, consulted Reynolds before he would buy. Reynolds agreed to a sale by Clark to Hall. Hall bought, and it is inferable that when Hall took possession by purchase, Reynolds released Clark and Maddux from all further obligation of any kind to him under the mortgage. Clark was then out entirely. He had sold to Hall with the mortgagee's consent, and from the time of his delivery to Hall neither he nor Maddux had any interest in the property. All this occured before the creditors of Clark and Maddux attached, and in the absence of fraud the sale to Hall will be upheld. Hall, who had bought in good faith, had full possession before the creditors of his vendor, Clark, seized the property. So that, under the circumstances as thus far inquired into, third persons who were creditors of Clark and Maddux could have had no interest in the property at all after the delivery to Hall. Nor can we discover any way by which the sheriff can avoid the strength of plaintiff's case, as we must consider it on a motion for a nonsuit. We regard the contract between Reynolds and Hall as an agreement whereby Hall was to pay Reynolds the same price for the property that Clark and Maddux were to have paid him, less the amount of their payments; and it appears that to secure the payment of the said sum he simply gave a verbal mortgage to Reynolds by which, as owner of the property, he granted a lien upon it to secure the payment of the sum due, upon the same terms, and subject to the same conditions that had formed part of the mortgage contract between Clark and Maddux and Reynolds. He had a right to make such an agreement, and the mortgage will be as binding and effectual between him and Reynolds as though the contract

had been reduced to writing. (Cobbey on Chattel Mortgages § 14.) The unfulfilled terms of the written mortgage were the terms of the new mortgage. It was a novation, whereby all three of the parties entered into the agreement, and the liability of Clark to Reynolds was extinguished upon a promise evidenced by the conduct and agreements of each as a consideration for the promise of the others. (Clark on Contracts, p. 613.)

Possession in Reynolds was not necessary to convey title to Hall. (*Stafford* v. *Whitcomb*, 8 Allen, 518.) Hall, as mortgagor, was lawfully in possession by the transfer from Clark with the mortgagee's consent. His title was therefore good. The subsequent interference with Hall's possession by the creditors of those who had theretofore sold out to Hall, being unwarranted, gave to Reynolds, as mortgagee, a right to the possession of the property, and to retake the same at once under the provisions of Hall's verbal mortgage, for it was a claim and seizure by persons not parties to the contract between Hall and Reynolds. Reynolds, therefore, could maintain conversion against the defendants. (*Tuttle* v. *Hardenberg*, 15 Mont. 219, 38 Pac. 1070; *Swenson* v. *Kleinschmidt*, 10 Mont. 473, 26 Pac. 198; Jones on Chattel Mortgages, § 445.)

We do not believe there was a conditional sale to Hall. There is some testimony to the effect that there was, but the evidence goes to prove a mortgage by writing from Clark and Maddux to Reynolds, and by word from Hall to Reynolds. Suppose, though, the agreement between Reynolds and Hall was one of conditional sale by Reynolds to Hall, still the evidence did not authorize a nonsuit, inasmuch as the creditors of Clark and Maddux had no right to complain, because the sale was honestly made and consummated before their attachments were levied. Our conclusion upon this branch of the case is that the court ought not to have sustained the motion for a nonsuit, and that for error in having granted the motion, the judgment must be reversed.

Defendants' counsel says, in his brief, that there is no

allegation in plaintiff's complaint that "in this attachment and
seizure the defendants did any wrong whatever." In conver-
sion plaintiff need go no further in his complaint than to state
his title to the property converted, or his right of possession,
a description of the property, and a statement of its value,
the acts of the defendant which deprived plaintiff of his prop-
erty, and a demand for judgment for the damages sustained.
"The mode of alleging the act of conversion must depend
upon the facts of the case. It is not necessary for the plaint-
iff to allege the details from which his title, or possession, or
the conversion by the defendant would follow as their legal
effect. Instead of giving a narrative of all the acts performed
by the defendant in order to accomplish a conversion, it is
permissible for the pleader to allege generally that the de-
fendant converted the property to his own use. A fuller
statement of the fact may be preferable, but excessive partic-
ularity is not required in the statement of the manner in
which a wrong was committed, as the defendant is presumpt-
ively better informed of the facts than the adverse party, and
the general rule of pleading applies that less particularity is
required where the facts lie more in the knowledge of the
opposite party than of the party pleading." (Baylies, Code
Pleading, p. 153.)

In *Baltimore & Ohio Railroad Co.* v. *O'Donnell*, 49 Ohio
St. 489, 32 N. E. 476, the court said: "The ultimate fact
to be pleaded is the conversion, and in actions of that nature
a petition with proper allegations of the plaintiff's ownership
of the property and of its value, and which avers that the
defendant converted it to his own use, states a cause of action."

Tested by these rules, plaintiff's complaint clearly stated a
cause of action.

3. Defendants refer to the lack of proof of a demand. A
demand was not necessary. (*Eddy* v. *Kenney*, 5 Mont. 502,
6 Pac. 342.)

Judgment reversed.                                *Reversed.*

MR. CHIEF JUSTICE BRANTLY, being disqualified, took no
part in this decision.