REYNOLDS, RESPONDENT, *v.* FITZPATRICK ET AL., APPELLANTS.

(No. 2,782.)

(Submitted February 26, 1910.   Decided March 8, 1910.)

[107 Pac. 902.]

*Conversion—Pleading and Proof—Variance—Bona Fide Purchasers—Notice of Liens—Appeal.*

Appeal from Judgment—Dismissal—When.
 1. An appeal from a final judgment, not taken within one year after entry thereof, will be dismissed. (Revised Codes, sec. 7099.)
Conversion—Pleading and Proof—Variance.
 2. Under a general allegation that at the time of a conversion plaintiff was the owner, and entitled to the possession, of the chattels described, he may introduce any evidence whatever to show title in him; hence where plaintiff had made such a general averment, he was properly allowed to introduce proof that at the time of the wrongful taking he claimed a right to the property by virtue of a verbal mortgage, even though in his complaint he had referred to a written one, and the claim of variance was without merit.
Same—*Bona Fide* Purchaser—Notice of Liens.
 3. It is not necessary that a buyer of personal property should have had actual notice of a particular instrument creating a lien upon it, to deprive him of the character of a *bona fide* purchaser; knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, is fatal to his claim to be considered a *bona fide* purchaser.
Same—*Bona Fide* Purchaser—Question for Jury.
 4. Evidence *held* sufficient to go to the jury on the question whether one who claimed as a *bona fide* purchaser of chattels which were the

Mont., Vol. 40—38

subject matter in an action in conversion, had sufficient knowledge to apprise him of plaintiff's claim or had received such notice as would lead an honest man, in the exercise of ordinary prudence, to make further inquiry before buying.

*Appeal from District Court, Deer Lodge County; W. R. C. Stewart, Judge of the Ninth Judicial District, presiding.*

ACTION by J. B. Reynolds against John Fitzpatrick and another, as sheriff and deputy sheriff, respectively, of Deer Lodge county. From a judgment for plaintiff, and from an order denying a new trial, defendants appeal. The appeal from the judgment is dismissed, and the order is affirmed.

*Messrs. Lamb & Walker* submitted a brief in behalf of Appellants. *Mr. E. M. Lamb* argued the cause orally.

In behalf of Respondent, there was a brief by *Messrs. Rodgers & Rodgers,* and oral argument by *Mr. W. B. Rodgers.*

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

In 1896 J. B. Reynolds commenced this action against John Fitzpatrick and John Conly, respectively sheriff and deputy sheriff of Deer Lodge county, to recover damages for the conversion of personal property. The complaint is stated in two separate counts. Issues were joined, and upon the first trial the district court sustained a motion for nonsuit and entered judgment dismissing the action. Upon appeal to this court the judgment was reversed. (*Reynolds* v. *Fitzpatrick*, 23 Mont. 52, 57 Pac. 452.) Upon a second trial the plaintiff prevailed; but on appeal that judgment was reversed for errors committed on the trial. (*Reynolds* v. *Fitzpatrick*, 28 Mont. 170, 72 Pac. 510.) Reynolds was the original owner of the goods in controversy. He sold them to Clark & Maddux and took from the purchasers a chattel mortgage to secure the balance due on the purchase price. Later Hall succeeded to the interest of Clark & Maddux, and, by agreement of all the parties, was substituted as the

debtor in the place and stead of Clark & Maddux.  On the first appeal this court held that the arrangement between Hall and Reynolds amounted to Hall giving to Reynolds a verbal mortgage upon the property, upon the same terms and conditions as those contained in the written mortgage from Clark & Maddux.  When this action was commenced, the defendants attempted to justify their possession of the property under an attachment levied at the instance of Collins & Co., in an action against Clark & Maddux, and upon this last trial Collins also sought to show that some three or four days after the attachment was levied, he purchased the goods from Hall for value without notice of plaintiff's outstanding claim.  For a statement of the facts more in detail and the questions determined, a reference to the former decisions in this case will be sufficient. Upon the third trial the plaintiff again recovered judgment, and it is from that judgment and an order denying defendants a new trial that these appeals are now prosecuted.

The last judgment was rendered and entered on October 12, 1906.  The notice of appeal was not given until August 3, 1909.  Section 7099, Revised Codes, provides that an appeal from a final judgment may be taken within one year after the entry of the judgment.  Since the attempted appeal was not taken until nearly three years after the entry of the judgment, the appeal from the judgment must be dismissed.  (*Ramsey* v. *Burns,* 24 Mont. 234, 61 Pac. 130.)  But all questions sought to be raised are presented upon the appeal from the order denying a new trial; and upon that appeal the appellants urge, (1) that there is a fatal variance between the pleading and proof; and (2) that the evidence is not sufficient to sustain the verdict.

1. It is contended that the pleadings count upon the written chattel mortgage, while the evidence discloses that the plaintiff is relying upon the verbal mortgage.  In the first count of the complaint the plaintiff did rely for recovery upon the written mortgage executed and delivered by Clark & Maddux to him. That mortgage was held to be invalid upon the first appeal. Upon the last trial the plaintiff relied upon the second count of

his complaint; and while in that count reference is made to the written mortgage, it does contain this general allegation: "That at the time of said levy, attachment, and seizure the said J. B. Reynolds, plaintiff herein, was the owner of, in possession of, and entitled to the possession of said goods and chattels hereinbefore described." Upon the former appeal (23 Mont. 52, 57 Pac. 452), this court said: "In conversion plaintiff need go no further in his complaint than to state his title to the property converted, or his right of possession, a description of the property, and a statement of its value, the acts of the defendant which deprived plaintiff of his property, and a demand for judgment for the damages sustained. 'The mode of alleging the act of conversion must depend upon the facts of the case. It is not necessary for the plaintiff to allege the details from which his title, or possession, or the conversion by the defendant would follow as their legal effect.'" The general rules relating to pleading and proof in an action for conversion are stated in 21 Encyclopedia of Pleading and Practice, 1063 and 1115, as follows: "A declaration or complaint in trover does not undertake to notify the defendant of the precise nature of the plaintiff's title or what are the evidences of it. Those are matters of evidence merely. It is sufficient to allege merely that at the time of the conversion the plaintiff was the owner and entitled to the immediate possession of the goods. Such an averment is an affirmation of a fact, and is not open to the objection that it is a mere legal conclusion." (1063.) "General averments of ownership and right of possession authorize the plaintiff to introduce any evidence whatever to show how he became the owner and entitled to possession, and he is not restricted to proof of any particular origin of ownership or right to possession." (1115; see, also, *Conner* v. *Bludworth*, 54 Cal. 635.)

The general allegation in the complaint, then, was sufficient to admit proof that plaintiff asserted a right to the property at the time of the conversion, by virtue of the verbal mortgage from Hall to him, and there was not any variance.

2. It is earnestly urged that the evidence discloses that Collins was a *bona fide* purchaser of the property from Hall, without notice of plaintiff's claim under the verbal mortgage. But the record contains the conversations had between Hall and Collins, and between Reynolds and Collins, before Collins purchased. Reynolds testified: "I remember the occasion or the fact about this property being attached by these people, by the defendants. I knew J. V. Collins at that time. I saw him about the time this property was attached. Q. Well, when was it? A. Right after it was attached, he went down the street there, and I told him that I had a mortgage on it and asked him why he did not notify me—he agreed to before. Q. Who did you tell that to? A. Mr. Collins. Q. Now, was that the same date of the attachment or another date?. A. The same date." Hall testified: "This [the attachment] all happened on Monday and I saw Mr. Collins on Tuesday, I believe; at any rate it was the next day I saw him to know him. I had some conversation with Mr. Collins about the property that had been attached by Mr. Conly and which I have heretofore described in my evidence. I do not remember fully what that conversation was. * * * As regards what I said to Mr. J. V. Collins about the way Mr. Reynolds had an interest in the fixtures, I told Mr. Collins the same thing that I told the sheriff, Mr. Conly. I told him that Jack Reynolds had a mortgage on the fixtures, and I was going to pay it as soon as I could. I would own the fixtures myself. * * * I think the day on which I sold to Collins was Wednesday; it was Wednesday or Thursday that same week." And Collins testified: "I said this attachment was levied on the 2d of December, 1895. Either upon that day or the next day I met Mr. Reynolds upon the street, and Mr. Hall was with him. I had a talk with Mr. Reynolds at that time, and I said to him that the place was closed up, and Mr. Reynolds said: 'I have a mortgage on that'; and I said, 'I don't think your mortgage is any good'; and he said, 'Well, we'll see.' * * * That was the next day after the attachment, if I re-

member correctly, which I think I do. * * * I purchased on the 4th.''

It thus appears that, before Collins purchased from Hall, he had some knowledge that Reynolds claimed an interest in the property by virtue of a chattel mortgage; and we think it was for the jury to say whether, from the information he received, Collins was apprised of the claim asserted by Reynolds, or received such notice as would lead an honest man, exercising ordinary prudence, to make further inquiry. The rules governing a case of this character are stated in 2 Cobbey on Chattel Mortgages, section 608, as follows: ''When a purchaser has knowledge of any fact sufficient to put him on inquiry as to the existence of some right or title in conflict with that he is about to purchase, he is presumed to have made the inquiry, and ascertained the extent of such prior right or to have been guilty to a degree of negligence equally fatal to his claim.to be considered as a *bona fide* purchaser. * * * Notice to a purchaser of property of the existence of liens or encumbrances thereon is sufficient, in the absence of explanation, to charge him with notice of any and all liens or encumbrances which an inquiry would have disclosed. It is not necessary, in such a case, to show actual notice of the particular instrument creating a lien, to deprive him of the character of a *bona fide* purchaser.'' (*Reed* v. *Gannon,* 50 N. Y. 345.)

Our conclusion is that the evidence was sufficient to go to the jury. The general verdict in plaintiff's favor is conclusive against the defendants. The cause appears to have been fully and fairly submitted to the jury in the instructions given.

We do not find any error in the record. For the reason that the appeal from the judgment was not taken within the time limited by law, that appeal is dismissed, and the order refusing defendants a new trial is affirmed.

*Affirmed.*

MR. JUSTICE SMITH concurs.

MR. CHIEF JUSTICE BRANTLY, being disqualified, did not hear the argument, and takes no part in the foregoing decision.