## CALIFORNIA LAND & CONSTRUCTION CO. v. HALLORAN.

No. 5138. Decided December 29, 1932. Rehearing Denied January 13, 1934. (17 P. [2d] 209.)

*H. D. Moyle* and *R. C. Wilson*, both of Salt Lake City, for appellant.

*Dan B. Shields* and *D. M. Draper*, both of Salt Lake City, for respondent.

ELIAS HANSEN, J.

Plaintiff brought this action by filing a complaint in the district court of Salt Lake county, Utah. Defendant demurred specially and generally to the complaint. The demurrer was sustained. Plaintiff declined to amend its complaint, and thereupon the action was dismissed. The appeal is prosecuted from the judgment of dismissal. The order sustaining the demurrer and judgment dismissing the action are assigned as error. It is in substance alleged in the complaint: That plaintiff is, and at all times mentioned in the complaint has been, a corporation organized and existing under and by virtue of the laws of the state of California; that on November 21, 1924, plaintiff complied with the laws of the state of Utah entitling it to do business in this state; that the defendant is a resident of Salt Lake county, Utah; that on June 7, 1924, plaintiff entered into a written con-

tract with the Price River water conservation district, a municipal corporation of the state of Utah; that in said contract plaintiff agreed to construct a dam and relocate a track for the Denver & Rio Grande Railway so as to permit the construction of the dam and the subsequent impounding of water above the dam; that in consideration of the construction of the dam, the relocation of the railway track, and the performance of certain other covenants contained in the contract, the Price River water conservation district agreed to pay plaintiff in progressive payments $750,000, par value of its bonds; that immediately after the contract above mentioned was entered into plaintiff entered upon the actual performance of the work and other acts and undertakings which it was obligated to perform; that on July 22, 1924, the plaintiff and the Price River water conservation district entered into an escrow agreement with the Halloran-Judge Trust Company, a corporation. A copy of the escrow agreement is attached to the complaint and by reference made a part thereof. The escrow agreement in substance provides: That the Price River water conservation district has deposited $750,000, par value of its bonds, to be held by the Halloran-Judge Trust Company until disposed of strictly in accordance with instructions contained in the escrow agreement. The bonds so deposited with the Halloran-Judge Trust Company were to be used for the following purposes: $250,000 to pay for the construction of the railway track; $150,000 to pay for the construction of the dam; $125,000 to purchase a water right; $125,000 to purchase land to be inundated by the proposed reservoir; $20,000 to be used to effect a settlement of a suit relative to a water right which was in the course of litigation; $50,000 to pay incidental expenses such as printing of bonds, inspection, expenses of test pits, etc.; and $30,000 to pay attorneys and engineers for professional services rendered in connection with the proposed irrigation project. As the work of constructing the dam progressed, the Halloran-Judge Trust Company was directed by the escrow agreement to release to plaintiff from

the bonds allocated to the construction of the dam sufficient bonds to pay 85 per cent of the monthly certified estimate of the engineer in charge of the construction. Upon the completion of the dam and the acceptance thereof by the engineer in charge, the remaining bonds allocated to the payment of the construction of the dam were to be delivered to the plaintiff. The escrow agreement contained a similar provision with respect to the delivery of the bonds to the plaintiff as the construction of the railway progressed. The $125,000 allocated to the purchase of the water right, the $20,000 allocated to pay for the settlement of litigation concerning some of the water right, and the $125,000 allocated to the purchase of the land to be inundated, were to be paid to the plaintiff as soon as title to the water and land vested in the district. The $50,000 allocated to pay for test pits, printing of bonds, inspection expenses, etc., were to be delivered to the plaintiff when the project was completed. The $30,000 par value of bonds allocated to the payment of professional services rendered by attorneys and engineers in connection with the construction of the project were to be delivered to the plaintiff upon the attorneys and the engineers filing receipts acknowledging that they had received full payment for their services. The escrow agreement further provides:

"Should any of the above bonds be sold by the undersigned California Land & Construction Company, prior to delivery hereunder, Halloran-Judge Trust Company may deliver said bonds or any part thereof so sold, provided it receive all moneys arising from said sale or sales, and allocate the same in lieu of the bonds sold to the respective purposes herein set out, and hold the same as respective funds for the purposes and payments in cash in lieu of bonds; and in such event the California Land & Construction Company will accept cash in lieu of bonds on any engineer's estimate or on the fulfillment of any of its obligations hereunder referred to at the same rate of discount as that at which the bonds may have been sold.

"In case of default of construction company and certification of that fact to you by the engineers of the District, then and in that event all bonds or proceeds of bonds left in your hands hereunder shall henceforth be held subject only to the order of the District."

It is further alleged in the complaint that the plaintiff prosecuted the work of constructing the irrigation project in reliance upon the prompt delivery of the bonds according to the terms of the escrow agreement and if the bonds or the cash proceeds thereof had been so delivered the plaintiff would have been ready, willing, and able to finance itself and provide the necessary funds for the complete performance of its contract with the Price River water conservation district; that plaintiff was, however, absolutely dependent upon the prompt delivery of the bonds or the proceeds derived from the sale thereof in order to pay the necessary expenditures incurred in the prosecution of its contract with the conservation district; that the defendant W. J. Halloran at all times mentioned in the complaint was the president of the Halloran-Judge Trust Company; that he knew the plaintiff was dependent upon the bonds or the proceeds thereof for funds with which to carry out its contract with the conservation district; that on or about September 20, 1924, "defendant W. J. Halloran as an individual and not in his capacity as president of the said trust company, without plaintiff's knowledge or consent and without any claim of right, fraudulently, maliciously and in wanton disregard of plaintiff's rights, and intending to injure and oppress plaintiff and to force plaintiff by reason of financial embarrassment to breach its said construction contract with said Water Conservation District, withdrew from said escrow certain bonds of said Water Conservation District of the total par value of $25,000.00, and sold the same for the sum of $25,000.00 and converted to his own use the proceeds of said sale, all of which was then unknown to plaintiff; that the said bonds thus wrongfully withdrawn and sold by said Halloran, were bonds which were to have been held in trust for delivery to or sale by the plaintiff, and plaintiff was the owner of and entitled to the immediate possession of the proceeds of the sale of said bonds"; that immediately after the defendant converted the bonds he deceitfully and with intent to mislead the plaintiff to its

financial embarrassment caused plaintiff to be notified that $25,000 of the bonds were sold, or contracted to be sold, at par; that plaintiff upon such information expended $15,000 in purchasing and renting equipment and shipping the same to the place where the construction work was to be performed. "That during the month of October, 1924, plaintiff tendered to defendant Halloran, bonds of the par value of $25,000.00, which said bonds plaintiff had thus been led to believe defendant Halloran had sold or contracted to sell for and on behalf of plaintiff, and demanded payment by defendant Halloran or said trust company of the cash price of said bonds in the sum of $25,000.00. Whereupon said defendant Halloran informed plaintiff that he had previously taken from escrow bonds of the total par value of $25,000.00 and had sold them and received the proceeds thereof, amounting to the sum of $25,000.00, but that he, Halloran, refused, without explanation of any claim of right, to pay to plaintiff the said cash proceeds." That when defendant refused to pay to plaintiff the $25,000 he derived from the sale of the bonds, plaintiff was rendered financially unable to continue its operations in constructing the irrigation project for the conservation district and was compelled to enter into a contract with Sutherlin, Barry & Co., a corporation, and Ernest S. Shields, an individual, to finish constructing the irrigation project for the Price River water conservation district; that defendant has failed and refused to pay the plaintiff the money derived from the sale of the bonds converted by him, except that he purchased from the plaintiff $25,000 par value of bonds at 50 per cent of their par value; that because of the wrongful conversion of the bonds by the defendant, plaintiff has been damaged in the sum of $340,-000. Judgment is prayed for that amount of actual damages and $25,000 punitive damages.

Defendant's demurrer attacks the complaint upon three grounds:

"(1) That plaintiff has no legal capacity to sue in the State of Utah. (2) That the complaint is ambiguous, unintelligible and un-

certain in this: (a) It appears from the complaint that the plaintiff would become entitled to the possession or ownership of certain bonds held in escrow only upon presentation to the escrow holder of a particular kind of evidence, but it cannot be determined from the complaint whether the plaintiff ever presented to the escrow holder evidence of the kind required by the contract or any evidence at all, or that plaintiff ever became entitled to bonds of the par value of $25,-000.00 or any other sum.    (b) It appears from the complaint that plaintiff made demand upon defendant for $25,000.00, but it cannot be ascertained from the complaint what defendant had done under the contract pleaded to entitle it to make such demand or to receive said sum.    (3) That said complaint does not state facts sufficient to constitute a cause of action."

The trial court overruled the demurrer as to the first ground and sustained it as to the other two.  No complaint is here made by either party because the court below overruled the demurrer as to the first ground.  The principal question upon which the parties divide is whether or not the allegations of the complaint state a cause of action.  It is urged on behalf of the defendant that the demurrer was properly sustained because: (a) The complaint shows on its face that the plaintiff did not have title or the right to the immediate possession of the bonds claimed by it at the time of the alleged conversion, and therefore it may not maintain an action in trover or conversion; and (b) that the complaint shows on its face that plaintiff at the time of the alleged conversion was doing business in this state contrary to law and therefore it could not acquire title to the bonds in controversy.  We shall dispose of the questions in the order named.

It will be noted that it is in substance alleged in the complaint that plaintiff is the owner of and entitled to the possession of the bonds therein described and that defendant wrongfully converted the same to his own use to plaintiff's damage in the sum stated.  Such allegations state all that is necessary to sustain an action for conversion.  36 Cyc. 2066, and cases there cited.  The following cases cited in

appellant's brief are to the same effect: *Conner* v. *Bludworth*, 54 Cal. 635; *Casco Mercantile & Trust Co.* v. *Central Savings Bank & Trust Co.*, 75 Colo. 478, 226 P. 868; *Harvey* v. *Lidvall*, 48 Or. 558, 87 P. 895; *Warren* v. *Dwyer*, 91 Mich. 414, 51 N. W. 1062; *Reed* v. *McRill*, 41 Neb. 206, 59 N. W. 775; *Sanderson* v. *Nunn* (Mo. App.) 259 S. W. 892; *Grant* v. *Hathaway*, 118 Mo. App. 604, 96 S. W. 417; *Reynolds* v. *Fitzpatrick*, 40 Mont. 593, 107 P. 902; *Paine* v. *British-Butte Mining Co.*, 41 Mont. 28, 108 P. 12; *Didriksen* v. *Broadview Hardware Co.*, 58 Mont. 421, 193 P. 63; *Harper* v. *Rivenbark*, 165 N. C. 180, 80 S. E. 1057. Respondent does not contend the law is otherwise where the pleader stops by merely alleging that at the time of the conversion he was the owner and entitled to the immediate possession of the property claimed to have been converted.

While respondent concedes that a cause of action in conversion is well pleaded by a general allegation of title and a right of possession, he contends that such rule does not apply when the complaint also contains allegations of specific facts tending to establish title and a right of possession in the plaintiff. In the latter case it is urged that the general allegations should be regarded as mere conclusions and the sufficiency or insufficiency of the complaint tested solely upon the specific facts averred. In support of his position in such respect, respondent cites and relies upon the following cases: *Gruwell et al.* v. *Seybolt et al.*, 82 Cal. 7, 22 P. 938; *Paine* v. *British-Butte Mining Co.*, 41 Mont. 28, 108 P. 12; *Craig* v. *Burns*, 65 Mont. 550, 212 P. 856. The question which thus divides the parties is not free from doubt if it be assumed that the complaint is necessarily fatally defective if it fails to state a cause of action in conversion. Under our Code of Civil Procedure we are not justified in viewing the allegations of the complaint merely for the purpose of determining whether or not sufficient facts are therein averred to state a cause of action in conversion. Comp. Laws Utah 1917, § 6442, provides:

"There is in this state but one form of civil action for the enforcement or protection of private rights and the redress or prevention of private wrongs."

Section 6566:

"The complaint must contain * * * a statement of the facts constituting the cause of action in ordinary and concise language."

Under these provisions of our Code the form in which the action is brought is immaterial. If sufficient facts are alleged to entitle plaintiff to relief, the pleading will be sustained and matters of form as well as allegations not appropriate to the purpose sought to be accomplished will be disregarded. The character of the action will be determined from the nature of the grievance complained of rather than from the form of the declaration or of the claim of the parties with respect to the form of the action. Although our Code has abolished forms of action, matters of substance are, in the main, the same as at common law. That is to say, the Code does not affect the right of a party to redress for a wrong but merely abolishes the form of the action which at common law was necessary to pursue in order to enforce such right. At common law the sufficiency of a complaint was tested by both the form of the action and the nature of the wrong complained of together with the relief sought, while under the Code the latter rather than the former is of controlling importance. Notwithstanding there is but one form of civil action under our Code, reference to the forms and principles of common-law pleading is frequently of aid in determining whether the facts alleged in a complaint are such as to entitle plaintiff to relief. A case involving a question similar to the one here involved is that of *Samuell* v. *Moore Mercantile Co.*, 62 Mont. 232, 204 P. 376, 378. It is there said:

"At common law, the action on the case was the great residuary remedy in the field of torts. It was designed to afford relief in all cases where one person was injured by the wrongful act of another and no specific remedy was provided. *Van Pelt* v. *McGraw*, 4 N. Y.

110. It was not infrequently termed a 'formless action,' in that it was not indicative of any particular form of action, but rather of a substantive class of actions of many different species that took the name from the fact that they were not included within any of the recognized forms of writs, but were begun by writs which set forth the facts and circumstances of the particular cases. *Cockrill* v. *Butler* (C. C.) 78 F. 679. In Comyn's Digest, under the title 'Action on the Case,' it is said:

"'In all cases where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case to be repaired in damages.'

"For a further discussion of the subject, reference may be had to 1 Bacon's Abridgment, 125; 5 Petersdorff's Abridgment, 194; Andrews' Stevens' Pleading, § 52; 3 Street's Foundation of Legal Liability, c. 18; 11 C. J. 1."

Assuming, without deciding, that the allegations of the complaint under review are insufficient to entitle plaintiff to maintain an action in conversion, may it be said that it is therefore without a remedy for the wrong complained of? The question must be answered in the negative. The fact that plaintiff may not have been entitled to the possession of the bonds in question would not defeat its right to recover such damages as it might have sustained by reason of the alleged wrongful conversion of the bonds. If, as is alleged in the complaint, the defendant wrongfully converted the bonds to his own use, he thereby invaded the rights of the plaintiff to have the bonds or the proceeds thereof retained by the Halloran-Judge Trust Company and eventually have them applied to the purposes for which they were placed in escrow. If it be conceded that neither the plaintiff nor the Price River water conservation district was entitled to the bonds in question at the time complained of, still they or either of them under the facts alleged in the complaint had an interest in the bonds sufficient to maintain an action in the nature of an action on the case for damages sustained by reason of the wrongful appropriation of such bonds or the proceeds thereof by a tortfeasor. *Samuell* v. *Moore Mercantile Company,* supra.

It will be noted that it is alleged in the complaint that on November 21, 1924, plaintiff corporation complied with the laws of Utah so as to entitle it to do business in this state. Respondent assumes that such allegation is in effect an allegation that plaintiff had not complied with the laws of this state prior to that date. Assuming respondent's construction of such allegation is correct, how stands the case? We have a statute, Comp. Laws Utah 1917, § 947, which provides:

"Any such corporation failing to comply with the provisions of the section 945 shall not be entitled to the, benefits of the laws of this state relating to corporations, and shall not sue, prosecute, or maintain any action, suit, counterclaim, cross-complaint, or proceeding in any of the courts of this state, on any claim, interest, or demand arising, or growing out of, or founded on any contract, agreement, or transaction made or entered into in this state by such corporation or by its assignor, or by any person from, through, or under whom it derives its interest or title or any part thereof; and shall not take, acquire, or hold title, possession, or ownership of property, real, personal, or mixed, within this state; and every contract, agreement, and transaction whatsoever made or entered into by or on behalf of any such corporation within this state, or to be executed or performed within this state, shall be wholly void on behalf of such corporation and its assignees and every person deriving any interest or title therefrom, but shall be valid and enforcible against such corporation, assignee, and person; and any person acting as agent of a foreign corporation which shall neglect or refuse to comply with the foregoing provisions shall be deemed guilty of a misdemeanor, and shall be personally liable on any and all contracts made in this state by him for or on behalf of such corporation during the time that it shall be so in default; provided, that this section shall not be held to apply to persons acting as agents for foreign corporations for a special or temporary purpose or for a purose not within the ordinary business of such cororations, nor shall it apply to attorneys-at-law as such."

It will be observed that the law just quoted strikes at any claim, interest, or demand, arising or growing out of, or founded on, any contract, agreement, or transaction made or entered into in this state. It does not refer to torts committed against the property rights of a foreign corporation

which has not complied with the laws of this state. It is difficult to conceive that the Legislature intended that a stranger to a transaction had with a foreign corporation may, at will, appropriate to his own use the property of such corporation or interfere with its contracts merely because it has engaged in business in this state without having complied with its laws. The language of the statute does not justify a construction that would lead to such results. So far as appears the plaintiff had not engaged in business in this state at the time the escrow agreement was entered into. At the time this action was begun plaintiff had complied with the laws of this state. The cases of *First Nat. Bank of Price* v. *Parker,* 57 Utah 290, 194 P. 661, 12 A. L. R. 1373, and *Dunn* v. *Utah Serum Co.,* 65 Utah 527, 238 P. 245, cited by respondent, deal with an attempt by a noncomplying foreign corporation to enforce contractural obligations. Those cases do not support the doctrine that a noncomplying foreign corporation is without redress against one who converts its property or wrongfully interferes with its contract. The purpose of requiring foreign corporations to comply with the laws of this state is to protect its citizens, and not to permit its citizens to commit torts against such corporations merely because they do not comply with the law. To permit a wrongdoer with impunity to appropriate to his own use the property of a noncomplying foreign corporation or wrongfully interfere with its contracts is not within the purpose of the statute. It is quite generally held that a noncomplying foreign corporation may sue for torts committed against it. 8 Thompson on Corporations (3d Ed.) § 6706, p. 980, and cases there cited. The rule is especially applicable where, as in the instant case, the foreign corporation had complied with the law at the time the action was begun. 8 Thompson on Corporations (3d Ed.) § 6676, p. 927. Plaintiff is entitled to maintain this action although it may have engaged in business in this state without complying with its laws so long as it had so complied at the time this action was commenced.

The court below was in error in sustaining the demurrer to the complaint.

The judgment is reversed. This cause is remanded to the district court of Salt Lake county, with directions to reinstate the same and overrule the demurrer. Appellant is awarded its costs.

STRAUP and EPHRAIM HANSON, JJ., concur.

CHERRY, C. J. (dissenting).

I agree to that part of the decision relating to the plaintiff's right to bring an action in this state, but I think the plaintiff's complaint failed to allege a causal connection between the alleged wrong of the defendant and the alleged damage to plaintiff. For this reason the demurrer was properly sustained, and the judgment should be affirmed.

FOLLAND, J. (dissenting).

I concur in the statement of CHERRY, C. J., and think also that no cause of action is stated in conversion because the general allegations of the complaint are controlled by the specific facts averred and these fail to disclose any right of possession in plaintiff to the bonds, the subject-matter of the action.